John **REDGATE**

v.

**FAIRFIELD UNIVERSITY, et al.**

**Civ. A. No. 592 CV 155 (WWE).**

United States District Court, D. Connecticut.

July 20, 1994.

Thomas E. Mangines, Brian A. Mangines, Mangines & Mangines, Fairfield, CT, for John Redgate.

Carolyn Roberts Linsey, Owens, Schine, Nicola & Donahue, Trumbull, CT, for Fairfield University, Fairfield College Preparatory School, James C.L. Arimond and Robert Perrotta.

### RULING ON MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff John Redgate brings this action against his former employers, defendants Fairfield University and Fairfield College Preparatory School ("Prep"), and against defendants Prep Headmaster Reverend James C.L. Arimond, S.J., and Robert Perotta. Plaintiff alleges defendants wrongly dismissed him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff also alleges the following pendent state law claims: breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, negligent misrepresentation, and negligent infliction of emotional distress. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion will be granted in part and denied in part.

### FACTS

From the pleadings and motion papers, the facts may be summarized as follows. Plaintiff was employed by defendant Prep as a freshman and sophomore English teacher for the 1985–86 and 1990–91 academic years, and as Dean of Students from September 1986 to June of 1990. Prep is a Catholic boys' high school owned and operated by defendant Fairfield University.

Plaintiff initiated his employment relationship with Prep in July 1984 when he wrote to then Principal Reverend Eugene J. O'Brien, S.J. In his letter, plaintiff expressed an interest in either a teaching or an administrative position at the high school. Between September and December of 1984, O'Brien informed plaintiff in a series of letters that a position teaching freshman and sophomore English would be available to him beginning September, 1985.

Plaintiff alleges that he voiced concerns about accepting the teaching position because it did not guarantee job security. In response to plaintiff's concerns, O'Brien allegedly assured plaintiff in a September 1984 conversation that plaintiff could expect to be employed at Prep "for as long as you want." Plaintiff retired from the United States Marine Corps and moved with his family from Virginia to Connecticut. On June 25, 1985, plaintiff signed a one year teaching contract with Prep.

At the close of the 1985–86 school year the Dean of Students position became available, and Prep offered it to plaintiff. Plaintiff responded to the offer with a letter dated April 3, 1986 to then Prep Headmaster Fr. Charles H. Allen. The letter proposed conditions on his acceptance of the administrative position, including a condition that would have enabled plaintiff to earn credit toward tenure for the time he served as Dean of Students.

Allen responded to Plaintiff's letter with a letter dated April 9, 1986. Allen's letter accepted two of plaintiff's proposals with slight modifications, but made no mention of the condition allowing plaintiff to earn tenure credit while an administrator.

Plaintiff alleges that when he asked Allen about the absence of the tenure provision in the April 9, 1986 letter, Allen responded, "John, you worry too much ... this is your Jesuit friend you're talking to ... you can stay here [at Prep] for 20 years if you want." Plaintiff took Allen's statement to indicate that he would be given tenure credit while serving as an administrator. Tenure is ordinarily earned at Prep at the beginning of the sixth academic year after the completion of five years of satisfactory full-time teaching at

the school. On May 9, 1986, plaintiff signed a one year contract for the Dean of Students position.

Plaintiff served as Dean of Students from September 1986 until June 1990. For each academic year that plaintiff served as Dean of Students he signed a one year contract. During the time that Plaintiff was Dean of Students, defendant Reverend James Arimond, S.J. replaced O'Brien as Headmaster. Arimond reorganized the staff and returned plaintiff to the faculty to teach freshman English for the 1990–91 school year.

In a March 25, 1991 letter, Arimond informed plaintiff that "[b]ased on enrollment and financial projections of the school," plaintiff's contract would not be renewed for the following year. In an attempt to keep his teaching job, plaintiff offered to take a cut in salary or to teach other subjects for which he was qualified. Prep declined plaintiff's offers. Plaintiff was 54 at the time of his termination, had taught at Prep for two years, and had served as an administrator for four.

Defendants maintain that financial exigencies and declining enrollment dictated that teaching positions be cut in the English, Theology, and Foreign Language Departments. The parties do not dispute that three teachers with one year toward tenure and ranging in age from 23 to 33 were also not offered positions for the following year. Nor do the parties dispute that Prep renewed the contract of Paul Hogan, aged in his late 20's and a teacher in plaintiff's department with the same amount of time teaching at Prep as plaintiff.

Defendants claim to have used the following formula for determining which jobs should be eliminated: teachers with the least years toward tenure would be the first to lose their positions. Among teachers with equal teaching seniority, Arimond claims to have evaluated the teachers on the following criteria: (1) previous teaching experience, (2) professional development and academic preparation, (3) extracurricular involvement, and (4) flexibility to teach all levels.

Both Mr. Hogan and plaintiff had taught English at Prep for two years. Mr. Hogan

had two years prior teaching experience whereas plaintiff had none. Both men had their Master's degrees. Mr. Hogan was doing additional course work at the time of Arimond's decision. Plaintiff had done no course work since obtaining his Master's in 1976. Both men had extracurricular involvement. Defendant claims that plaintiff lacked the ability to teach upper division courses in English while Mr. Hogan was qualified to do so. Plaintiff contends that he was readily qualified to teach upper level courses.

Prep's overall student enrollment for 1985–86 was 1,013. For 1989–90 overall enrollment was 943 students. By 1990–91 overall enrollment had decreased to 883 students. Prep's projections for overall enrollment show an expected increase to 922 students by 1996. Prep's freshman enrollment for 1989–90, 1990–91, and 1991–92 was 275, 184, and 216 students, respectively. For the years 1992–93 and 1993–94, the freshman enrollment was 231 and 218 students, respectively. Prep's budget surplus was $19,130 for 1990–91, $126,917 for 1991–92, and $102,460 for 1992–93.

## DISCUSSION

■ A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### Age Discrimination

In count one, plaintiff alleges that defendants violated the ADEA. The ADEA provides in relevant part that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's age." 29 U.S.C. § 623(a)(1). Those protected by the statute are individuals aged forty to seventy. 29 U.S.C. § 631(a).

■ In considering an employment discrimination claim, the court follows the burden shifting analysis articulated in *McDonnell Douglas v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). Under this test, plaintiff first must establish a *prima facie* case of discrimination. Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the discharge. If the defendant produces a legitimate, non-discriminatory reason, then the plaintiff has the burden of proving not only that the proffered reason is false, but also that it is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. 792 at 802–04, 93 S.Ct. 1817 at 1824–25; *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993).

■ In order to establish a *prima facie* case of discrimination the plaintiff must show that (1) he was within the group of individuals protected by the statute, (2) he was qualified for the job he held, (3) he was terminated, and (4) he was replaced by a younger person, or in the case of a reduction of force, the termination occurred under circumstances giving rise to an inference of age discrimination. *Montana v. First Federal Savings and Loan Association of Rochester,* 869 F.2d 100, 104–5 (2d Cir.1989). "The plaintiff's burden of proof at the *prima facie* stage is de minimis." *Dister v. Continental Group, Inc.,* 859 F.2d 1108 (2d Cir.1988).

■ Plaintiff has set forth facts establishing a *prima facie* case. The parties do not dispute that plaintiff was within the protected class, was qualified for his position, and was discharged. Since defendants did not directly replace plaintiff with a younger teacher, plaintiff must show that he was terminated under circumstances which give rise to an inference of age discrimination. The

fact that plaintiff was discharged while a younger teacher with an equal number of years teaching and roughly equal qualifications but with less years at Prep was kept on is sufficient to give rise to an inference of age discrimination.

■ Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to proffer a non-discriminatory reason for the termination. At this stage, defendant is not required to prove the truth of the non-discriminatory reason. Defendant simply must give a "clear and specific" explanation for its conduct. *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985).

■ Here, defendants have successfully rebutted the inference of age discrimination raised by plaintiff's *prima facie* case. First, defendants maintain that declining enrollment and financial exigencies mandated an elimination of positions in the Theology, Foreign Language, and English Departments. Second, defendants claim that under their criteria for evaluating non-tenured teachers, plaintiff was less qualified than the younger Hogan, making plaintiff the appropriate person to terminate. Defendants have thus successfully articulated a legitimate reason for plaintiff's termination.

■ Once the defendant has given a non-discriminatory reason for the termination, the burden shifts back to the plaintiff to prove that defendant's explanation was merely a pretext for discrimination. Plaintiff may prove pretext either by "directly persuading the court that a discriminatory reason more likely motivated the employer," or "by indirectly showing that the employer's proffered explanation is unworthy of credence." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1113 (2d Cir.1988).

■ Plaintiff here offers no direct evidence of discrimination. He calls into question factual issues which might show that Prep's explanations are without credence. For instance, plaintiff presents evidence showing that although overall enrollment declined at Prep from 883 students in 1990–91 to 857 students in 1991–92, the freshman enrollment for those years actually increased from 184 students to 216 students. Since plaintiff taught freshman English, a course required for all incoming students, there is a factual dispute as to whether defendants' proffered reason of decreased enrollment at Prep was merely a pretext for discrimination. Plaintiff also presents evidence showing that Prep had a budget surplus for three straight academic years. This is sufficient evidence to establish a factual question as to whether, as defendants claim, financial exigencies existed at Prep.

Under the *McDonnell Douglas* and *St. Mary's Honor Center* tests, there are questions of fact as to whether Prep's reasons for plaintiff's termination were pretextual and discriminatory. Therefore, summary judgment will be denied on the age discrimination claim.

### *Breach of Contract*

■ In count two, plaintiff sets forth a breach of contract claim. He contends that oral statements made to him by Allen assuring him employment "for as long as you want" and for "ten or twenty years" act as additional, superseding terms to all of his employment contracts with Prep. Plaintiff further maintains that Allen's oral statement, "John, you worry too much . . . this is your Jesuit friend you're talking to . . . you can stay here for 20 years if you want," represented a contract term granting him tenure credit for his years as Dean of Students, and was a condition upon which he entered into that position. Under these circumstances, plaintiff asserts that his discharge constitutes a breach of contract.

Connecticut's Statute of Frauds, C.G.S. § 52–550(a)(5) provides that no civil action may be maintained on an agreement unless the agreement or a memorandum of the agreement is made in writing and signed by the party or the agent of the party to be charged upon any agreement that is not to be performed within one year of its making. Plaintiff's breach of contract claims do not meet the requirements of the Statute of Frauds.

First, there are no signed writings that embody these alleged agreements. Second, lifetime or 10–20 year employment cannot be

performed within one year pursuant to the requirements of the statute. As for the tenure dispute, plaintiff claims to have made the agreement before signing the contract for the Dean of Students position on May 8, 1986. Even if he had only served one year as an administrator, the agreement could not have been completed, that is, tenure could not have accrued, until the end of the academic year, on June 30, 1987. It is inconceivable that the agreement could possibly have been performed within one year. Because plaintiff's breach of contract claims do not meet the requirements of the Statute of Frauds, defendants are entitled to summary judgment on count two.

### Breach of Implied Covenant of Good Faith and Fair Dealing

In count three, plaintiff sets forth a claim of breach of an implied covenant of good faith and fair dealing. Plaintiff claims that terminating him was contrary to Allen's representations that time spent as Dean of Students would count toward tenure, and that defendants' behavior constitutes a breach of an implied covenant of good faith and fair dealing. As noted, no cause of action exists for the breach of contract claim regarding alleged statements made to plaintiff in reference to length of employment or to tenure. Therefore, no cause of action for breach of an implied covenant of good faith and fair dealing can exist with regard to those statements. Summary judgment will be granted as to count three.

### Negligent Misrepresentation

In count four, plaintiff alleges that both Allen and O'Brien demonstrated a reckless disregard of whether their representations were factual, and that they failed to use reasonable care in communicating the representations to plaintiff. Since plaintiff relied to his detriment on both the representations of life or long-term employment and representations of tenure credit for his time in administration, he asserts a claim of negligent misrepresentation against defendant.

Connecticut courts broadly construe claims for negligent misrepresentation. Connecticut state law requires only that a complaint allege on its face that an employer failed to exercise reasonable care in making representations to an employee, and that the employee relied on those representations to his or her detriment. *D'Ulisse–Cupo*, 202 Conn. at 217, 520 A.2d 217. "For the purposes of a cause of action for negligent misrepresentation ... the plaintiff need not prove that the representations made by defendant were promissory. It is sufficient to allege that the representations contained false information." *D'Ulisse–Cupo*, 202 Conn. at 220, 520 A.2d 217.

Plaintiff's evidence establishes that Prep failed to exercise reasonable care in making representations to him, that those representations were false, and that plaintiff relied to his detriment on those representations. This evidence is sufficient to survive a motion for summary judgment. *D'Ulisse–Cupo*, 202 Conn. at 220, 520 A.2d 217. Summary judgment will be denied as to count four.

### Promissory Estoppel

In count five, plaintiff asserts that because he gave up his career as a United States Marine Corps officer, forgoing possible employment in Washington, D.C., and moved with his family from Virginia to Connecticut in reliance on defendant's promises employment for "ten or twenty years" and "for as long as you want," Prep is estopped from refusing to renew his contract. He further maintains that he entered into his administrative position in reliance on defendant's statement, "John, you worry too much ... you can have this job for ten or twenty years if you want it." Plaintiff claims to have suffered to his detriment in taking the Dean of Students position, because if he had stayed on as a teacher he could have earned credit toward tenure. Therefore, plaintiff maintains that the doctrine of promissory estoppel should render defendant's promises binding. The court disagrees.

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Restatement (Second) of Contracts § 90(1). Furthermore, "A fundamental element of promissory estoppel ... is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217 (1987).

In a strikingly similar case to the one at hand, the Connecticut Supreme Court considered representations made to a teacher at a private school that "everything looked fine for rehire for the next year," and that "[a]ll present faculty members will be offered contracts for the next year...." *D'Ulisse-Cupo,* 202 Conn. 206 at 215–16, 520 A.2d 217 at 221–2. The court held that the lack of a present intention on the part of the defendants to undertake immediate contractual liability coupled with the absence of material terms which are essential to an employment contract rendered the representations insufficiently promissory and indefinite.

In the present case, defendants' promises are likewise insufficiently promissory and insufficiently definite to justify plaintiff's reliance. The promises made to plaintiff were significantly less definite in their terms than those in *D'Ulisse-Cupo,* and lacked the specificity which would show a present intention to contract. Because the defendants' promises could not have been reasonably relied upon by plaintiff, summary judgment will be granted as to count five.

### *Negligent Infliction of Emotional Distress*

 In count six, plaintiff alleges that he suffered severe emotional pain and suffering due to defendants' conduct. In order to succeed on this theory, plaintiff must establish that defendants should have realized that their conduct created an unreasonable risk of distress and that the distress might result in bodily harm or illness. *Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519 (D.Conn.1985). These questions are inherently factual and are better left for the trier of fact. Summary judgment will be denied as to count six.

### *CONCLUSION*

For the reasons set forth above, defendants' motion for summary judgment [doc. # 592 CV 155 (WWE)] is GRANTED as to counts two, three, and five. Summary judgment is DENIED as to counts one, four, and six.