708 A.2d 460

EVELYNE GREENBERG, PLAINTIFF–APPELLANT, v. CAMDEN
COUNTY VOCATIONAL AND TECHNICAL SCHOOLS,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 21, 1998—Decided May 6, 1998.

Before Judges CONLEY, WALLACE and CARCHMAN.

*Alan H. Schorr* argued the cause for appellant (*Mr. Schorr*, on the brief).

*Charles W. Dortch, Jr.* argued the cause for respondent (*Sumners, Council, George & Dortch,* attorneys; *Mr. Dortch,* of counsel and on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

This is an employment discrimination case involving a female teacher who, at the age of forty-eight and in her third year of employment, was not rehired and, thus, was denied tenure. Plaintiff, Evelyne Greenberg, filed a complaint against defendant, Camden County Vocational and Technical Schools, claiming that the decision not to rehire her violated the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49. She appeals from the trial judge's grant of summary judgment in favor of defendant dismissing her complaint. We reverse.

Plaintiff was born on July 9, 1946. She received her Bachelor of Arts degree from the University of Miami, majoring in English and minoring in Spanish. She also received a Masters degree in bilingual bicultural studies from Marywood College. Thereafter plaintiff obtained her teaching certificates for Pennsylvania and New Jersey in 1989 and 1990, respectively. Prior to working for defendant, plaintiff taught at several high schools and educational institutions from February 1986 to June 1991, but never gained tenure.

On January 11, 1993, defendant hired plaintiff, then forty-five, as a non-tenured high school teacher in the English department at the Pennsauken campus for the period of January 20, 1993 to June 30, 1993. The school district reviews and evaluates teachers annually for rehire using observations, teacher evaluation forms and annual written performance reports in accordance with *N.J.S.A.* 18A:27–3.1 and *N.J.A.C.* 6:3–4.1.

Plaintiff's written performance evaluations for her first year of employment with the district, conducted on February 1, 1993 and May 25, 1993, were all positive. The evaluator noted "the in-

structor's enthusiasm and positive dialogue that appears to have affected this class" and "[a] good teaching/learning situated existed. . . ." However, during that year plaintiff received four "memos of concern" from Robert Morelli, the principal of the Pennsauken school. Three memos were for improperly filling out the sign in/out log and absence forms, and one memo was for submitting verification sheets late. Nevertheless, the district renewed plaintiff's employment for the 1993–94 school year.

Overall, Ms. Greenberg's written performance evaluations during the 1993–94 school year were positive, with few exceptions. Her October 25, 1993 evaluation, however, identified two areas in which her preparation performance was graded "NO" or "currently not acceptable." Her preparation plans failed to "make maximum use of technicians" and she failed to record her schedule in the long range section of her planning book. Yet, the evaluator noted that "[o]ne key element of the class observed was the teacher enthusiasm for the material and her support for the participation of the students." Plaintiff's November 23, 1993, December 20, 1993 and February 2, 1994 evaluations were all positive in every respect.

However, again plaintiff received "memos of concern" from Mr. Morelli during the 1993–94 school year. They were similar to the earlier "memos of concern." Four memos addressed her failure to properly sign in/out and complete an absence form. One memo stated that she had submitted untimely verification sheets. And so, while her June 27, 1994 performance evaluation was overall positive and listed her strengths as "[r]apport with students, [i]nstructional techniques, [c]lassroom management," it identified as needing improvement areas of "Management (Sign in/out sheets . . . absence slip . . . ) and Preparation." The only professional improvement objectives listed were for plaintiff "[t]o complete all school records accurately" "[t]o maintain a complete long range plan" and "[t]o include how you use your technicians in the management plan."

The district rehired plaintiff for the 1994–95 school year. During her third and final year with the school district, plaintiff received four written performance evaluations. In the first, a September 30, 1994 evaluation, the only negative evaluation was an "NI" or "performance is marginally acceptable, improvement is needed," for the required elements of her lesson plan. Plaintiff contends, however, that by letter dated October 14, 1994, Dr. O'Hara acknowledged that her lesson plans were individualized, and thus, the deficiency was corrected.

The second evaluation for the 1994–95 school year, conducted on November 22, 1994, identified plaintiff's performance as deficient in two areas. One was in the category of preparation for her failure to read an entire play prior to presenting it to the students. Plaintiff contends that she read the complete summary of the play contained in the teacher's guide as well as the teaching recommendations prior to presenting it to her class. The second criticism was in the category of class management, in that students stood up and put on jackets before the dismissal bell. Plaintiff asserts that only one student was involved and he put on his jacket only after the evaluator had already stood up and put on his jacket.

The third evaluation conducted on December 13, 1994, identified two areas of deficiency in preparation, one for failing to place a daily instructional objective in her lesson plan, and the second for failing to record the page numbers of the text being used that day in her plan book. She also received a deficiency in management for neglecting to give a copy of the text to the evaluator during the evaluation. Her performance was also found to be marginally acceptable in the category of followup "since [she] received notice on [her] evaluation of September 30, 1994 that [her] lesson plan entries for English IA and IIA were brief." To her credit, her evaluation reflected that "[a] good discussion [on Greek myths] followed and involved all students." The evaluation recommended that plaintiff meet with her staff development specialist for assistance with the unsatisfactory areas.

In the fourth evaluation on March 7, 1995, plaintiff received a deficiency in the category of professional qualities because she chewed gum during the evaluation. It was otherwise a positive evaluation. Plaintiff did not receive any "memos of concern" during the 1994–95 school year. She did, however, receive a "letter of concern" dated January 23, 1995 from Mr. Morelli listing the unsatisfactory areas in her evaluations and the "memos of concern" over the course of her employment with the district. He informed her that the unsatisfactory areas would "be considered in conjunction with your overall performance as a teacher during the months ahead when recommendations regarding your future employment status are made." Needless to say, plaintiff was not rehired and was not accorded tenure.

Plaintiff's proof of discrimination is primarily two-fold: 1) statistics that she claims show a pattern of excluding women over the age of forty-five, and 2) a comparison of the individual records of several other younger women teachers who were granted tenure when she was not. The records reflect that these younger teachers had, if not more, at least as many deficiencies in their evaluations and "memos of concern."

The statistics are as follows. At the end of the 1994–95 school year, nine teachers at the Pennsauken campus were evaluated for tenure. Three teachers, including plaintiff, all women over the age of forty-five, were terminated. Six teachers, four women and two men, all under the age of forty-five, were granted tenure. In 1993–94, two female teachers, age forty-five and forty-seven, were evaluated for tenure. The district granted the forty-five year old tenure but denied the forty-seven year old tenure. In 1992–93, two female teachers under the age of forty-five were both granted tenure. While no teacher was denied tenure, no teacher over forty-five was granted tenure. In 1991–92, a male teacher age fifty-two was granted tenure, while a female teacher age twenty-eight was denied tenure. Finally, in 1990–91, all six teachers under consideration received tenure with the oldest teacher being a forty-one year old female. Thus, plaintiff contends that of

thirteen teachers at the Pennsauken campus evaluated for tenure over the past three years, every female *over* the age of forty-five has not been rehired and accorded tenure by the district, even though four women, between the ages of forty and forty-five, one forty-five, two forty-three and one forty-two, did receive tenure during this time frame. On the other hand, no male over forty-five, even one aged fifty-two, was ever denied tenure during this time period.[1] In contrast, defendant presented additional statistics for the Gloucester campus, not just Pennsauken. These statistics, excluding those for Pennsauken, revealed that at the end of the 1994–95 school year, of six teachers evaluated for tenure, five were accepted, of which one was a fifty-four year old female teacher. The only teacher denied tenure was a male, age forty-seven.

As to the evaluation records of the younger teachers, while several received "memos of concern," some for administrative infractions similar to plaintiff's and others for deficiencies of a more serious nature, these teachers were rehired by the district. First, teacher A–1, a thirty-nine year old female, received eight "memos of concern" from January 1993 through April 1994. Like plaintiff, she incorrectly filled out an absence form and forgot to sign the in/out log. She also forgot to attend a meeting with the principal, permitted students to play cards during school, failed to provide a required list of students who were outside of the classroom when a fire alarm sounded and arrived late for class.

Teacher A–2, a female age thirty-eight, received seven "memos of concern" citing her failure to call in by a designated time to

---

[1] According to Peter Van Schaick in his article *Sizing Up Downsizing Cases for Age Discrimination*, 144 *N.J.L.J.* 20–21 (1996), one may calculate an odds ratio and, if less than a 64% rule of thumb, an adverse impact is indicated in most circumstances. Breaking down plaintiff's statistics into teachers granted tenure and those denied tenure on one axis, and teachers age of forty-five or older and those under forty-five on the second axis, an "odds ratio" of 3.57%, which indicates age discrimination, can be obtained. After recalculating using a cut-off of age forty, the odds ratio becomes 19%, still indicative of potential age discrimination.

report her absence, to submit an updated meeting agenda, to properly fill out absence forms and to provide comments on student report cards for those students receiving grades of D or F.

Teacher A–4, a female six years younger than plaintiff, received eight "memos of concern" from December 1992 through May 1995. Similar to plaintiff, she failed to properly sign in/out and complete absence forms. However, she also had poor student attendance in her class and allowed a student to eat and drink outside the cafeteria against school regulations. Notably, she received three of the memos in her third year of employment with the district.

In contrast, B–2, a fifty-two year old female and the oldest of the teachers not rehired, appears to have had fewer deficiencies than any of the female teachers retained. In her three years of employment she only received three "unsatisfactory" ratings on her evaluations in the areas of "[f]ollow-up" and "[c]lass management" and one "memo of concern" regarding student supervision. Nonetheless, the district notified her by letter that it found her deficiencies to be "extremely high for a second year teacher in our school and of a magnitude that indicates continued unacceptable performance in future years."

Since we consider this appeal in the context of a summary judgment, we, as must the motion judge, determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.... If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of *Rule* 4:46–2." *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). It is only "when the evidence 'is so one-sided that one party must prevail as a matter of law,' [that] the trial court should not hesitate to grant summary judgment." *Ibid.* (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L. Ed.*2d 202, 214 (1986)).

The New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49 provides, in pertinent part:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> a. For an employer, because of the ... age, ... [or] sex ... of any individual, ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. ...
>
> [*N.J.S.A.* 10:5–12(a).]

■ In order to establish a LAD cause of action, the plaintiff must " 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.' " *Maiorino v. Schering–Plough Corp.*, 302 *N.J.Super.* 323, 344, 695 *A.*2d 353 (App. Div.), *certif. denied*, 152 *N.J.* 189, 704 *A.*2d 19 (1997) (quoting *Miller v. CIGNA Corp.*, 47 *F.*3d 586, 597 (3d Cir.1995)). Direct proof of discrimination is not often found, and thus, discrimination cases can be proved through circumstantial evidence. *Ibid. See Parker v. Dornbierer*, 140 *N.J.Super.* 185, 189, 356 *A.*2d 1 (App. Div.1976) ("we recognize that discrimination is not usually practiced openly and that intent must be found by examining what was done and what was said in the circumstances of an entire transaction.").

■ Proof of discrimination involves a three step process. First, the plaintiff carries the burden of establishing, by a preponderance of the evidence, the elements of a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 *U.S.* 792, 802, 93 *S.Ct.* 1817, 1824, 36 *L. Ed.*2d 668, 677 (1973). To establish a *prima facie* case under LAD, a plaintiff must show:

> (1) that she is a member of a class protected by the anti-discrimination law; (2) that she was qualified for the position or rank sought; (3) that she was denied promotion, reappointment, or tenure; and (4) that others ... with similar or lesser qualifications achieved the rank or position.

[*Dixon v. Rutgers, the State Univ. of N.J.*, 110 *N.J.* 432, 443, 541 *A.*2d 1046 (1988).]

*See Texas Dep't of Community Affairs v. Burdine*, 450 *U.S.* 248, 253, 101 *S.Ct.* 1089, 1094, 67 *L. Ed.*2d 207, 215 (1981) (recognizing that a plaintiff's burden in establishing a *prima facie* case "is not onerous.").

After an employee has established a *prima facie* case, a presumption is created that the employer unlawfully discriminated against the employee. *Stewart v. Rutgers, the State Univ.*, 120 *F.*3d 426, 432 (3d Cir.1997). The burden then shifts to the employer to rebut the presumption of discrimination by either establishing the reasonableness of the otherwise discriminatory act or by articulating a legitimate, nondiscriminatory reason for the employment action. *Maiorino v. Schering–Plough Corp., supra*, 302 *N.J.Super.* at 345–47, 695 *A.*2d 353. " 'To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection' which would support a jury finding that unlawful discrimination was not the cause of the adverse employment action." *Stewart v. Rutgers, supra*, 120 *F.*3d at 432 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 *U.S.* 502, 507, 113 *S.Ct.* 2742, 2747, 125 *L. Ed.*2d 407, 416 (1993)). The employer only carries the burden of production, rather than persuasion, of showing a legitimate, nondiscriminatory reason for its action. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't of Community Affairs v. Burdine, supra*, 450 *U.S.* at 254, 101 *S.Ct.* at 1094, 67 *L. Ed.*2d at 216; *Dixon v. Rutgers, supra*, 110 *N.J.* at 442–43, 541 *A.*2d 1046.

Once the employer sets forth a legitimate, nondiscriminatory reason for its adverse employment action, the burden again shifts to the employee to show that the employer's articulated reason "was merely a pretext to mask the discrimination" or was not the true motivating reason for the employment decision. *Kelly v. Bally's Grand, Inc.*, 285 *N.J.Super.* 422, 430, 667 *A.*2d 355 (App.Div.1995). An employee successfully meets this burden "by

persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine, supra*, 450 *U.S.* at 256, 101 *S.Ct.* at 1095, 67 *L. Ed.*2d at 217.

■ To defeat a motion for summary judgment at this stage, when the defendant answers the plaintiff's *prima facie* case with legitimate, nondiscriminatory reasons for its action:

> [T]he plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons, . . ., was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). . . . [To do so,] the non-moving [party] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," . . . and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

> [*Fuentes v. Perskie*, 32 *F.*3d 759, 764–765 (3d Cir.1994) (citations omitted).]

*See also Kelly v. Bally's Grand, Inc., supra*, 285 *N.J.Super.* at 431–32, 667 *A.*2d 355 (holding that "plaintiff need not provide direct evidence that the employer acted for discriminatory reasons in order to survive summary judgment[;]" rather, she "need only point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons.").

If a plaintiff who has established a *prima facie* case can raise enough suspicions that the employer's proffered reasons for termination were pretextual, the motion for summary judgment should thus be denied. *Bray v. Marriott Hotels*, 110 *F.*3d 986, 990–91 (3d Cir.1997). The standard, then, is "whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably could support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence necessarily leads to [the] conclusion that the employer did act for discriminatory reasons." *Chipollini v. Spencer Gifts, Inc.*, 814 *F.*2d 893, 900 (3d Cir.), *cert. dismissed*, 483 *U.S.* 1052, 108

*S.Ct.* 26, 97 *L. Ed.*2d 815 (1987) (citing *Graham v. F.B. Leopold Co., Inc.,* 779 *F.*2d 170, 172–73 (3d Cir.1985)).

■ There is no question that plaintiff was not rehired and thus she established the third prong of her *prima facie* burden. She also established the first prong of that burden. Forty-eight at the time of the decision not to rehire and, thus, to deny tenure, she was clearly a member of a protected class. *Geldreich v. American Cyanamid Co.,* 299 *N.J.Super.* 478, 489, 691 *A.*2d 423 (App.Div. 1997) (plaintiff "was in a protected class at age fifty-four."). *See Bergen Commercial Bank v. Sisler,* 307 *N.J.Super.* 333, 342, 704 *A.*2d 1017 (1998), *certif. granted,* 153 *N.J.* 216, 708 *A.*2d 67 (1998) ("a LAD age discrimination claim, unlike a federal ADEA claim, is not limited to persons over the age of forty."). Plaintiff also demonstrated the fourth prong of the test—that others, seemingly similarly situated but younger, were rehired and granted tenure. In this respect, the record reflects that of the nine teachers evaluated for tenure at the Pennsauken campus, the district granted tenure to six teachers, yet several of the teachers granted tenure had administrative deficiencies similar to plaintiff's. *See Bennun v. Rutgers State Univ.,* 941 *F.*2d 154, 176 (3rd Cir.1991), *cert. denied,* 502 *U.S.* 1066, 112 *S.Ct.* 956, 117 *L. Ed.*2d 124 (1992) (plaintiff satisfied the fourth prong by showing that full professorships were available at the time he was denied a promotion); *Redgate v. Fairfield Univ.,* 862 *F.Supp.* 724, 728–29 (D.Conn.1994) (the "fact that plaintiff was discharged while a younger teacher with an equal number of years teaching and roughly equal qualifications but with less years at [the school] was kept on is sufficient to give rise to an inference of age discrimination" and meet the fourth prong); *Geldreich v. American Cyanamid Co., supra,* 299 *N.J.Super.* at 489–90, 691 *A.*2d 423 ("[i]t was not incumbent upon plaintiff to prove that the persons who succeeded to his job functions were of equal or lesser qualifications[;]" plaintiff satisfied the fourth prong of his *prima facie* burden by showing his job functions were assumed by three employees, one six years younger and another ten years younger). *Compare Fischer v. Allied*

*Signal Corp.*, 974 *F.Supp.* 797, 807 (D.N.J.1997) (plaintiff failed to establish *prima facie* case of age discrimination where three of the five positions plaintiff applied for were filled by persons older than plaintiff); *Esposito v. Township of Edison*, 306 *N.J.Super.* 280, 703 *A.2d* 674 (App.Div.1997) (upholding a denial of summary judgment on an age discrimination claim under LAD when plaintiffs failed, in part, to show that persons of similar or lesser qualifications were promoted).

The critical dispute here focused upon the second prong of plaintiff's *prima facie* burden, that is her qualification for rehire and tenure. In this respect, although defendant concedes that plaintiff's educational background was sufficient for her initial hire, it claims the fifteen deficiencies noted in her various evaluations "were certainly more than ample reason, when viewed in their totality and in the context of the Defendant's discretion" to deny plaintiff tenure as they "ran the gamut from a lack of preparation to failure to have a daily instructional objective in lesson plans, failure to follow administrative procedures in regard to signing out, [and] failure to teach from 'bell-to-bell.'" In granting the motion, the trial court determined that

> the issue of qualification is an issue that is to be determined by the School Board.
>
> The argument on behalf of the defendant is that she was considered not qualified. Not because of her presentation during the classroom to the students, but because of her administrative deficiencies, of which there were many. I think that that's a determination that should have been made by the Board unless there's a showing that that was pretextual.

■ We are convinced that both defendant's claims of lack of qualification and the motion judge's comments thereon relate to the second step of the analysis once a *prima facie* case has been established, not to the second prong of plaintiff's *prima facie* burden. To prove qualification under that second prong, a plaintiff may show either that she was performing her job at a level that met her employer's reasonable expectations *or* that her qualifications were similar to other tenure candidates. *Bennun v. Rutgers State Univ., supra,* 941 *F.*2d at 176 (plaintiff was only required to show that his "qualifications were at least sufficient to

place him in the middle group of tenure candidates as to whom both a decision granting tenure and a decision denying tenure could be justified as a reasonable exercise of discretion by the tenure-decision making body."); *Geldreich v. American Cyanamid Co., supra,* 299 *N.J.Super.* at 489, 691 *A.*2d 423 (fifty-four year old plaintiff established second prong as he was "satisfactorily performing his job...."). *See Matczak v. Frankford Candy and Chocolate Co.,* 136 *F.*3d 933, 939 (3d Cir.1997) (at the *prima facie* stage, once it is determined that a plaintiff "was objectively qualified for the job, [the court] should not have required [plaintiff] to demonstrate that his performance met his employer's subjective expectations.").

As for plaintiff's qualifications under the second prong, she had a Bachelor of Arts degree and a Masters degree, as well as her teaching certificates from Pennsylvania and New Jersey. In addition, she had previously taught at several high schools and educational institutions for five years. Although her evaluations in the second and third year of her employment with defendant contained some deficiencies, overall they were positive. Indeed, she was rehired after the first and second years. Moreover, she clearly met the minimum qualifications for tenure consideration, that is employment as a teacher in the school district for three consecutive years. *N.J.S.A.* 18A:28–5.

When the record is viewed most favorably for plaintiff, then, we are convinced she demonstrated that she was objectively qualified for tenure consideration and that she did demonstrate a *prima facie* case of discrimination sufficient to shift the burden to defendant to show a legitimate, nondiscriminatory basis for the decision not to rehire her and, thus, not to grant her tenure. In this respect, defendant contends that even if plaintiff established a *prima facie* case by a preponderance of the evidence, its "exhaustive evaluation process which noted deficiencies of [p]laintiff over the past three years, clearly evidenced a legitimate non-discriminatory reason for [it's] decision." Certainly the noted deficiencies facially appear to provide a legitimate nondiscriminatory basis for

defendant's determination, particularly given the Board's broad discretion in its tenure determinations.

Plaintiff contends, however, that she presented evidence of pretext sufficient to rebut defendant's claim of a legitimate, nondiscriminatory rationale, at least within the context of the motion for summary judgment. First, she points out that the written evaluations and "memos of concern" did not indicate that she would exhibit continued unacceptable performance in future years. Indeed, she notes the absence of any "memos of concern" in her third year. Second, she contends that other younger teachers had as many "memos of concern," some of a more serious nature than plaintiff's, yet received no warnings and were rehired. In contrast, she points out that the oldest of the teachers, B–2, was not rehired despite an almost perfect record, with fewer deficiencies than any of the female teachers retained.

Although what constitutes evidence of pretext varies with the factual circumstances of each case, evidence suggesting that the defendant is not "providing the whole story," "prefers younger employees" or behaves inconsistently or contradictorily has been sufficient to rebut a defendant's legitimate, nondiscriminatory reason for the adverse employment action. *See Edwards v. Schlumberger–Well Servs.*, 984 *F.Supp.* 264, 283 (D.N.J.1997) (although unable to show that defendant's proffered reason for laying her off was "incoherent, inconsistent or contradictory," plaintiff survived summary judgment by offering sufficient circumstantial evidence "allowing a reasonable factfinder to believe that [defendant's] account does not provide the whole story, and that [plaintiff's] gender was more likely than not a motivating or determinative factor in the layoff decision."); *Maiorino v. Schering–Plough Corp., supra,* 302 *N.J.Super.* at 349–51, 695 *A.2d* 353 (the employer's legitimate, nondiscriminatory reason for terminating plaintiff was pretextual and "not worthy of credence" for "despite an exceptional year in sales, [plaintiff] received the lowest rating in his district while three younger employees, with lower sales numbers, received higher ratings."); *Geldreich v. American*

*Cyanamid Co., supra,* 299 *N.J.Super.* at 490–91, 691 *A.*2d 423 ("[a] showing of preferences for younger employees in a business organization may constitute circumstantial evidence of age discrimination."). *See generally Bennun v. Rutgers State Univ., supra,* 941 *F.*2d at 179–80 (hispanic associate professor who was denied promotion to full professor successfully established that university's reasons for denying his promotion were pretextual); *Redgate v. Fairfield Univ., supra,* 862 *F.Supp.* at 729 (genuine issue of material fact existed as to whether private high school's proffered reasons for terminating a fifty-four year old non-tenured English teacher, *i.e.,* decreased enrollment and financial exigencies, were merely a pretext for age discrimination). *Compare Vanasco v. National Louis Univ.,* 137 *F.*3d 962, 967 (7th Cir.1998) (finding that a chart showing that six out of nine applicants over the age of fifty were denied tenure but only four out of forty-four applicants under fifty were denied tenure, without more information regarding the relative qualifications of the individuals, was insufficient to infer age discrimination from a private university's decision to deny tenure to a fifty-eight year old instructor); *Kuhn v. Ball State Univ.,* 78 *F.*3d 330, 331–32 (7th Cir.1996) (professor who relied on one anecdote that younger professor was promoted and did not attempt to analyze other promotion decisions failed to show that university's proffered explanation for denial of promotion was pretext for age discrimination); *Cliff v. Board of Sch. Comm'rs of the City of Indianapolis,* 42 *F.*3d 403, 411–12 (7th Cir.1994) (affirming summary judgment in favor of the school board where public school teacher who claimed age, sex and race discrimination came forward with no evidence that board lied about its proffered reasons for her dismissal, a variety of evaluators found her to be an "ineffective" teacher with consistent unsatisfactory evaluations, and there was no evidence that she could control students or that other teachers experienced similar discipline problems); *Fischer v. Allied Signal Corp., supra,* 974 *F.Supp.* 797 (no inference of age discrimination where employee manager who was terminated during a reorganization at age thirty-nine applied for five newly created positions in the depart-

ment and defendant filled the positions with individuals who were fifty-five, forty-seven, forty-two, thirty-eight and thirty-two years old).

Here, plaintiff demonstrated that other younger teachers with similar deficiencies were retained by the district. Teacher A–1, a thirty-nine year old female, received eight "memos of concern" from January 1993 through April 1994 for such administrative infractions as forgetting to attend a meeting with the principal, incorrectly filling out an absence form, forgetting to sign the in/out log, permitting students to play cards during school, failing to provide the list of students outside of class when a fire alarm sounded and arriving late for class. Teacher A–2, a female age thirty-eight, received seven "memos of concern" from December 1993 through May 1995 citing her failure to phone in her absence by a designated time, to submit an updated meeting agenda, to fill out absence forms correctly, and to provide comments for students receiving grades of D or F. Teacher A–4, a female age forty-three, received eight "memos of concern" from December 1992 through May 1995 for failing to properly sign in/out and complete absence forms, addressing the poor student attendance in her class and allowing a student to eat and drink outside the cafeteria against school regulations. Interestingly, three of the memos were issued in her third year of employment. All three of these teachers, who were less than forty-five, were rehired and received tenure.

On the other hand, teacher B–2, a fifty-two year old female, who was the oldest of the teachers terminated, had fewer deficiencies than any of the younger female teachers granted tenure. Over the course of her three years of employment, B–2 received a rating of "unsatisfactory" only three times on her formal evaluations in the areas of "[f]ollow-up" and "[c]lass management" and received only one memo of concern regarding student supervision. Yet she was notified that her performance was such as to jeopardize her rehire and tenure.

Finally, plaintiff's statistical chart, viewed most favorably for her, shows that of all the teachers up for tenure over the last five

years, all female teachers over the age of forty-five were terminated, while all the younger teachers were retained. Accepting her proofs, as we must, the odds over three years of this happening by coincidence were 84 to 1, and the odds of this happening five years in a row were almost 5,000 to 1. Indeed, the Superintendent, Mr. Haldeman, who is a former mathematics instructor, admitted that the odds of this happening by accident were "not very likely."

Undoubtedly, the statistics can be read differently. Indeed, the motion judge found no evidence of a pattern of discrimination when he observed:

> I'm looking at the chart that plaintiff has presented. And, going back to 1990, there were six teachers seeking tenure. All six gained tenure. Included in that group was one female over the age of 40 . . . .

> In 1991–92, . . . there were two persons seeking tenure. One was a male, 52, and got tenure. And, the female, 28, she did not get tenure. In 1992–93, there were two teachers seeking tenure. They were both female. They both got tenure. They were both over the age of 40 . . . .

> In 1993–94, there . . . were two teachers seeking tenure, both female. One got tenure, age 45. One did not, age 47.

> In 1994–95, six teachers gained tenure . . . six out of nine gained tenure, three did not. The three that did not include the plaintiff and two others both over the age of 40; 46, 48, and 52 respectively. One teacher who did gain tenure, of the six was 43 years of age and female. One was 40 years of age and male . . . .

> Plaintiff claims this is a pattern. I don't see any pattern.

But viewing plaintiff's evidence in its entirety and according her the benefit of favorable inferences, we cannot say it is so one-sided that a reasonable juror could not conclude defendant's legitimate, nondiscriminatory reasons for not rehiring plaintiff were pretextual.

Reversed and remanded for further proceedings consistent with this opinion.