840 A.2d 856

PAUL S. BEATTY, PLAINTIFF APPELLANT, v. JOHN J. FARMER, JR., JEFFREY J. MILLER, MARK J. FLEMING, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 30, 2003—Decided January 23, 2004.

Before Judges PRESSLER, PARKER and COLEMAN.

*Paul S. Beatty,* appellant pro se.

*Peter C. Harvey,* Attorney General of New Jersey, attorney for respondents (*Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Roopa Bariya,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

COLEMAN, J.A.D.

Plaintiff Paul S. Beatty is appealing from an order granting summary judgment in favor of defendants and dismissing his complaint based on alleged age discrimination. The defendants are the then Attorney General John J. Farmer, then Director of the Division of Law Jeffrey J. Miller, and then Assistant Attorney General Mark Fleming. The motion judge determined that defen-

dants' proffered business reason for the decision not to hire was not rebutted by plaintiff nor shown to be pretextual. We affirm substantially for the reasons expressed by the Hon. Paulette Sapp–Peterson, J.S.C. in her oral opinion on the record on September 27, 2002. We add the following comments.

On March 23, 2001, plaintiff, who had practiced law for thirty-four years and who was then fifty-nine years old, wrote to defendant John J. Farmer, Jr., the Attorney General of the State of New Jersey, seeking a position as a Deputy Attorney General. On June 7, 2001, plaintiff was interviewed by defendant Assistant Attorney General Mark Fleming, after which Fleming wrote a memorandum to the then Director of the Division of Law, defendant Jeffrey J. Miller, recommending that Miller interview plaintiff. Miller, whose responsibilities included the hiring of Deputy Attorneys General, possessed the ultimate authority to hire acceptable candidates. After receiving Fleming's memorandum and reviewing plaintiff's application, including his writing sample, Miller decided not to schedule an interview.[1] Miller made a note in the margin of Fleming's memorandum, "No. Writing sample is awful" and he directed his secretary to have Fleming send plaintiff a rejection letter. Fleming had not reviewed the plaintiff's writing sample before making his recommendation to Miller.

The writing sample consisted of two appellate briefs plaintiff had filed with the Appellate Division on behalf of his ex-wife, then his wife. According to Miller's certification, he had concerns with the form and the tone of the writing sample. As to the form, the briefs contained one sentence paragraphs, the citation form was improper and the grammar was, at times, awkward. The tone was inappropriately accusatory and unprofessional, such as "[t]his Police Officer is a liar and if this lying under oath was done by an

---

[1] As a matter of practice and routine, Miller would not provide to Farmer the resumes of any applicant he had decided not to hire. So he did not forward plaintiff's resume to Farmer.

ordinary citizen he or she would be indicted by this same Prosecutor for perjury."

On June 28, 2001, Fleming sent plaintiff a rejection letter notifying him that the Attorney General's Office was not able at that time to offer him a position. Thereafter, plaintiff sent letters to Farmer dated July 2 and July 13, 2001. He suggested that Farmer should personally review his "subordinate's unreasonable rejection of [his] employment application." Reminiscent of the tone of his writing sample, the second of those letters was unnecessarily inflammatory. He wrote:

Maybe your review would have discovered that no one over fifty years old had been hired in the last decade as a deputy attorney general. Maybe all your attorney employees are less than fifty years old, etc. If so, possibly age discrimination exists in your hiring process.

In fact, the certification of Jeffrey Miller established that in the three year period between August 1998 when Miller became Director of the Division of Law and August 2001, he had hired one-hundred ninety-six Deputy Attorneys General. Of that number, thirty-four were over forty years of age—the protected class under *N.J.S.A.* 10:3–1, relating to employment in public service, and under Title VII of the Civil Rights Act of 1964 (Title VII), 42 *U.S.C.A.* § 2000e–2, and the Age Discrimination in Employment Act (ADEA), 29 *U.S.C.A.* § 623(a) and § 631(a). Eighteen of the thirty-four were over fifty years of age. In the round of hiring in which plaintiff's application was considered, fifty-two Deputy Attorneys General were hired; nine of the fifty-two were over forty and three of those were over fifty-four. As of February 22, 2002, the date of Miller's certification, the Division of Law employed five-hundred twenty-seven Deputy Attorneys General; one-hundred forty-nine of those employees were fifty years of age and older.

Despite those statistics, plaintiff asserts the hiring figures are not applicable because he is not alleging a claim of general age discrimination. He emphasizes he is alleging there was discrimination against him personally because during the period from April 20, 2001 to June 28, 2001 when his application was accepted,

considered and rejected, three persons under forty years of age—one thirty-nine, one thirty-eight and one twenty-nine—were hired while he, a fifty-nine year old, was not. On September 13, 2001, plaintiff filed his complaint in the Superior Court, Law Division, Mercer County, alleging age discrimination in violation of (a) the statute prohibiting, in the selection of persons for employment in the service of the State, discrimination against job applicants age forty or over, *N.J.S.A.* 10:3-1, and (b) the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5-4 and *N.J.S.A.* 10:5-12(a).

Although we typically look to federal cases arising under Title VII and ADEA in analyzing discrimination claims, we note that the LAD, unlike ADEA, rests on an independent assessment of the language and purpose of *N.J.S.A.* 10:5-4 and -12(a). *See Bergen Commercial Bank v. Sisler*, 157 *N.J.* 188, 215, 723 *A.*2d 944 (1999) (holding that the LAD's prohibition against age discrimination is not limited to the protection of older workers but is broad enough to accommodate a twenty-five year old's claim of age discrimination based on youth). Despite that distinctive substantive difference between the LAD and the federal statutes addressing age discrimination, it is nevertheless, recognized that any claim of age discrimination is appropriately evaluated under the modified *McDonnell Douglas* standard adopted by the New Jersey Supreme Court in *Erickson v. Marsh and McLennan Co.*, 117 *N.J.* 539, 550, 569 *A.*2d 793 (1990).[2]

The requisite analysis involves a three-stage process, which was summarized in the opinion in *Bergen Commercial Bank, supra*, as follows:

> The *McDonnell Douglas* standard is a three-stage process, the first stage of which requires the plaintiff to prove, by a preponderance of the evidence, the four elements of a prima facie case of discrimination. A prima facie cause of action under the LAD is established when [t]he plaintiff [ ] demonstrate[s] by a preponderance of the evidence that he or she (1) belongs to a protected class, (2) applied

---

[2] *McDonnell Douglas Corp. v. Green*, 411 *U.S.* 792, 802, 93 *S.Ct.* 1817, 1824, 36 *L.Ed.*2d 668, 677 (1973).

and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications.

Establishment of a prima facie case gives rise to a presumption that the employer unlawfully discriminated against the employee. In order to rebut the presumption, the employer in the second stage of the process must come forward with admissible evidence of a legitimate, non-discriminatory reason for its rejection of the employee.

Where the employer produces such evidence, the presumption of discrimination disappears. In the third and final stage of the process the burden of production then shifts back to the employee, who has "the opportunity to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." An employee may meet this burden either by persuading the court "directly 'that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' "

Although the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment action was caused by purposeful or intentional discrimination. In meeting that burden, the "plaintiff need not prove that age was the sole or exclusive consideration" in the determination to discharge him; rather, he need only show "by a preponderance of the evidence that it made a difference" in that decision.

[*Bergen Commercial Bank v. Sisler, supra*, 157 *N.J.* at 210–211, 723 *A.*2d 944 (internal citations omitted) ].

*See also Greenberg v. Camden County Vocational and Technical Schools*, 310 *N.J.Super.* 189, 198–200, 708 *A.*2d 460 (App.Div.1998); *Maiorino v. Schering–Plough Corp.*, 302 *N.J.Super.* 323, 345–347, 695 *A.*2d 353 (App.Div.), *certif. denied*, 152 *N.J.* 189, 704 *A.*2d 19 (1997).

■ The focus of this case is on the third stage of the analysis. For purposes of their summary judgment motions, defendants assumed and the motion judge had earlier ruled that plaintiff had satisfied or could satisfy his burden of establishing the four elements of a prima facie case based on age discrimination. Defendants' motion was premised on their proffer of evidence related to a legitimate business reason for their decision not to hire plaintiff. Director Miller, the decision-maker, certified that the writing sample plaintiff submitted was awful. In his own certification, plaintiff acknowledges "they have the right to ques-

tion the adequacy of my writing samples but that does not make my professional record 'awful.' " In plaintiff's opinion, Miller "was unjust to hold his extreme 'writing sample tone' position." We have reviewed the writing sample submitted by plaintiff and concur with defendants' assessment and that of the trial court that it was well below the professional level reasonably required by the Attorney General. *Compare Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 *F.*2d 509, 533 (3d Cir.), *cert. denied,* 510 *U.S.* 826, 114 *S.Ct.* 88, 126 *L.Ed.*2d 56 (1993) (reversing district court's holding that questioned the wisdom of a law firm's partnership standards which considered legal analysis a critical category of performance review).

■ Though the presumption of discrimination was dispelled by the proffer of a legitimate non-discriminatory reason for the employment decision, *id.* at 211, 723 *A.*2d 944; *see also St. Mary's Honor Ctr. v. Hicks,* 509 *U.S.* 502, 507–08, 113 *S.Ct.* 2742, 2747, 125 *L.Ed.*2d 407, 416 (1993), plaintiff did not raise a genuine factual dispute as to whether the quality of his writing sample was the true reason for the employment decision or merely a pretext for discrimination. As the motion judge put it:

And you come forward with nothing, nothing as far as the Court is concerned, that in any way raises a fact question about that particular issue. And the only evidence that would convince this Court that this matter should go to the jury is if there was evidence that writing in and of itself is not the sole factor considered by the Attorney General in hiring. And frankly, that has not been explored. I suggested that the last time. If this is a situation where people get hired in the Attorney General's Office without regard to their writing skills, then clearly that would be additional evidence that the Court could consider as to whether or not the issue of pretext should go to the jury.

But, none of that has been explored despite the suggestion.... And my colloquy with [the Deputy Attorney General] involved a question well, maybe there are people who get hired in the Attorney General's Office and their writing samples are never looked at.

But, in the absence of that kind of evidence, as far as the Court is concerned, the evidence is so overwhelming with regard to the writing sample that no genuine issue of material fact exists that the motivating factor or the true reason or the real reason that you were not hired is because of your age. Clearly, the defendants have presented evidence of [the] hiring record of the defendants during that round. And I saw that in your papers, you question what the round was. But, the fact of the matter is that although you choose to dispute it, you have not come forward

with any evidence, as far as the Court is concerned, competent evidence, to dispute the fact that between August 24th, 1998 and August 30th, 2001 Assistant Attorney General Miller hired 196 D.A.G.'s. And of the 196 D.A.G.'s hired by Miller, 34 were over 40 and 18 were over 50.

There were 527 Deputy's Attorney General's on staff as of October 16th, 2001. 149 were over 50 years of age. And 52 Deputy's Attorney General were hired in the same time frame of your application. And although during that finite period of those months between April and June, the people who were hired were younger than you, when the record is considered overall, the Court is satisfied that there are no genuine issues of material fact in dispute.

Plaintiff bore the ultimate burden of demonstrating that age played a role in the decision making process and that it had a determinative influence on the outcome of that process. *Bergen Commercial Bank v. Sisler, supra,* 157 *N.J.* at 207, 723 *A.*2d 944. To establish pretext, he needed to establish "that (1) a discriminatory reason more likely motivated the employer than the employer's proffered legitimate reason, or (2) the defendant's proffered explanation is 'unworthy of credence.' " *Maiorino v. Schering–Plough, supra,* 302 *N.J.Super.* at 347, 695 *A.*2d 353 (citing *Texas Dep't of Comty. Affairs v. Burdine,* 450 *U.S.* 248, 256, 101 *S.Ct.* 1089, 1095, 67 *L.Ed.*2d 207, 217 (1981)); *Greenberg v. Camden County Vocational and Technical Schools, supra,* 310 *N.J.Super.* at 199–200, 708 *A.*2d 460. *See also Brewer v. Quaker State Oil Refining Corp.,* 72 *F.*3d 326, 331 (3d Cir.1995); *Fuentes v. Perskie,* 32 *F.*3d 759, 763–64 (3rd Cir.1994); and *Johnson v. Penske Truck Leasing Co.,* 949 *F.Supp.* 1153, 1169 (D.N.J.1996).

In response to a motion for summary judgment, a plaintiff need not meet the ultimate burden of persuasion, but he must cast such serious doubt on the veracity of the employer's articulated legitimate reason as to allow a jury to reasonably conclude that the employer was motivated to act for the discriminatory reason alleged by plaintiff. *Kelly v. Bally's Grand, Inc.,* 285 *N.J.Super.* 422, 432, 667 *A.*2d 355 (App.Div.1995). "[T]he non-moving [party] must demonstrate such 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, ... and hence infer

that the employer did not act for [the asserted] non-discriminatory reasons.'" *Greenberg v. Camden County Vocational and Technical Schools, supra,* 310 *N.J.Super.* at 200, 708 *A.*2d 460 (citing *Fuentes, supra,* 32 *F.*3d at 765). The motion judge correctly concluded that plaintiff failed to submit evidence that would raise a genuine issue of material fact.

"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all the legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." *R.* 4:46–2(c). Viewing the facts in the light most favorable to plaintiff, the only evidence tending to suggest age discrimination is plaintiff's observation that during the three month period from April 20, 2001 to June 28, 2001 when his application was pending, three persons were hired who were not in the protected class. That time frame is too brief and the sampling is too small to be meaningful, particularly when compared to the age composition of defendants' work force and their undisputed hiring patterns over a three year period. *Compare Vanasco v. Nat'l–Louis Univ.,* 137 *F.*3d 962, 967 (7th Cir. 1998) (finding that a chart showing that six out of nine applicants over the age of fifty were denied tenure but only four out of forty-four applicants under fifty were denied tenure, without more information regarding the relative qualifications of the individuals, was insufficient to infer age discrimination from a private university's decision to deny tenure to a fifty-eight year old instructor). Although statistical evidence in a pretext case need not be "finely tuned," *Johnson v. Penske Truck Leasing Co., supra,* 949 *F.Supp.* at 1177–78, the triers of fact could not reasonably conclude from the scant numerical base relied upon by plaintiff that defendants' proffered reason for the employment decision—the quality of the submitted writing sample—was pretextual. "When the evidence 'is so one-sided that one party must prevail as a matter of law, a trial court should not hesitate to grant summary judgment.'"

*Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). This is such a case.

Affirmed.