691 A.2d 423

RICHARD GELDREICH, PLAINTIFF–RESPONDENT/CROSS–APPELLANT, v. AMERICAN CYANAMID COMPANY, DEFENDANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1997—Decided April 15, 1997.

480

Before Judges LANDAU, WALLACE and KIMMELMAN.

*Steven L. Lapidus* argued the cause for appellant (*Robinson, Lapidus & Livelli,* attorneys; *Mr. Lapidus, Serene M. Hennion,* and *Virginia L. Hardwick,* on the brief).

*Patrick J. Monaghan, Jr.* argued the cause for respondent (*Monaghan, Monaghan, Lamb & Marchisio,* attorneys; *Mr. Monaghan, Mark F. Heinze,* and *Salvatore E. Rozzi,* on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

Defendant American Cyanamid Company appeals a wrongful discharge verdict rendered against it in favor of plaintiff for $315,000. Plaintiff Richard Geldreich cross-appeals from the dismissal by the trial court of his age discrimination claim brought against defendant pursuant to the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42.

## I

Plaintiff began a thirty-one year professional career with defendant in 1960, at age 23, starting as an accounts payable trainee at its Formica subsidiary company in Ohio. Initially, he earned $375 per month. Over the years and after several relocations and many promotions, plaintiff was transferred to defendant's headquarters in Wayne, New Jersey as a manager of plant accounting and data processing for the Fibers Division. In 1983, plaintiff was promoted to Manager of Accounting Systems for the Chemical Group Controllers Department in which position he remained until February 13, 1991, when plaintiff was summarily informed that he was being terminated by reason of a reduction in force. At that point in time, plaintiff was fifty-four years of age, was earning $85,000 per year, and had worked for defendant and its subsidiaries for a total of thirty-one years.

Plaintiff then brought this suit in two counts, first, alleging age discrimination in violation of the LAD provisions and, second, alleging wrongful termination in violation of defendant's written personnel policy for salaried non-union employees since defendant did not seek to find and offer to plaintiff alternative employment within the company prior to his termination.

It appears that throughout his career with defendant, plaintiff received consistently favorable performance reviews which, over the years, contained such phrases as "excellent performance," "[o]verall performance and results are very good," "excellent 'feel' for financial data," "meets all major requirements," "excels in several major areas," and "has performed with enthusiasm and accuracy." At trial, plaintiff's supervisor, Robert Ritter, testifying for the defense, asserted that plaintiff was "only a fair accountant" and that other employees had told him that plaintiff was "difficult to work with at times."

On January 1, 1967, plaintiff entered into an Employment Agreement with a subsidiary of defendant. The agreement provided in part:

The EMPLOYEE'S employment hereunder shall ... continue until the earlier of the EMPLOYEE'S death or his retirement date under any applicable retirement

plan then in effect, subject to the right of either the EMPLOYEE or the COMPANY to terminate the employment by written notice....

. . . .

This Agreement constitutes the entire understanding between the parties hereto ... and shall not be changed or modified except by a written instrument signed by both parties.

This Employment Agreement was subsequently assigned to defendant and was in effect when plaintiff was terminated.

Defendant claims that this agreement, which governs the relationship between the parties, is for an indefinite term and was therefore an at-will employment terminable with or without cause for any reason whatsoever. *See Woolley v. Hoffmann–La Roche, Inc.* 99 *N.J.* 284, 290–91, 491 *A.*2d 1257 (1985). On the other hand, plaintiff claims that defendant had a long-standing policy assuring that defendant would make special efforts to preserve the careers of long-service employees, even during a down-sizing for economic reasons, and asserts that defendant failed to honor its written promise to give deference to plaintiff's seniority during any reduction in force. Plaintiff relies on defendant's Personnel Policy Memorandum No. 8 (PPM–8), effective January 1, 1981, which in part provides:

## I.  OBJECTIVE

1.1  To ensure equitable and consistent treatment of employees in all cases of termination of employment, and to ensure performance of the obligations and requirements of the Employment Agreement on the part of both the employee and the Company.

. . . .

4.2  *Involuntary Termination*

. . . .

b.  *Reduction in Force for Economic Reasons*

(i) When it is necessary to terminate an employee because of a reduction in force or because the job is no longer needed, efforts will be made (particularly in the case of any long service employee) to take one or more of the following measures:

1.  place the employee in a job of comparable level within the division;

2.  examine the possibility of assigning the employee to a job of lower level and/or salary in the division;

3.  explore the possibility of transfer of the displaced employee to another division.

(ii) In the event that none of the above measures succeed, the employee is to be informed of the decision and the reasons therefor.

(iii) The provisions of Paragraphs *4.1 c, d, e* and *f* will then be followed.

PPM–8 is one of several memoranda which constitute defendant's Personnel Policy Manual. Plaintiff was given a copy of PPM–8 in the 1980's as part of his job responsibility in dealing with the special accounting treatment of termination pay. Plaintiff was also given access to the entire Personnel Policy Manual by his immediate supervisor. Plaintiff testified that he understood the policy contained in PPM–8 was to be enforced. There never was any disclaimer in the books he had been given and he only saw a disclaimer after this litigation began.

The Personnel Policy Manual produced at trial does have a disclaimer on the first page which states:

### NOTICE

The information contained in the Personnel Policy Memoranda is solely for the guidance of personnel representatives and is not intended to create any contractual right or obligation, either expressed or implied. The terms and conditions of employment of American Cyanamid Company non-union represented employees are governed solely by the Employment Agreement executed by the Company and the employee.

It does not appear that PPM–8 was distributed to the general non-unionized work force of defendant. Nevertheless, PPM–8 was not marked "confidential." It was made available for review by employees who sought to review it. Plaintiff had access to PPM–8 by virtue of his job. Other employees at plaintiff's level or higher had possession or access as well. Significantly, plaintiff testified that he expected the policy expressed in PPM–8 to be binding and continued his employment with PPM–8 in mind. We hold that the dissemination of PPM–8 coupled with the widespread awareness of its contents by management met the distribution test required by *Woolley v. Hoffmann–La Roche, supra,* 99 *N.J.* at 297–99, 491 *A.*2d 1257.

## II

Under certain circumstances, a company's employment manual or, as here, a document such as defendant's Personnel

Policy Memorandum No. 8, may contractually bind the company notwithstanding the fact that it contains a disclaimer negating the intent to create a contractual right or obligation.

*Woolley* makes it very clear that:

[I]f the employer, for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.

[99 *N.J.* at 309, 491 *A.*2d 1257.]

■ The language contained in the manual must be such that no one could reasonably have thought it was intended to create legally binding obligations. *Id.* at 299, 491 *A.*2d 1257. If one could reasonably think otherwise, then the termination provisions "would have to be regarded as an obligation undertaken by the employer." *Id.*

■ In our view, PPM–8 does contain language from which an employee could reasonably conclude that defendant bound itself to undertake certain procedures in the event of an involuntary termination. PPM–8 announces to an objective reader something more than good intentions. It may reasonably be read to indicate:

(A) The objective of PPM–8 is to *"ensure* equitable and *consistent treatment* of employees in *all cases of termination* .…"* (Emphasis added).

(B) In the event of an involuntary termination by reason of a reduction in force for economic reasons *"efforts will be made* to take one or more of the following measures: .…"* (Emphasis added).

(C) "In the event that none of the … measures succeed, the employee *is to be informed* of the decision [of termination]." (Emphasis added).

(D) The provisions of Paragraphs 4.1 c, d, e and f (voluntary termination) *"will then be followed."* (Emphasis added).

The disclaimer notice contained in the Personnel Policy Manual indicates that it is "solely for ... guidance ... and not intended to create any contractual right...." However, the unqualified requirements for action underlined above, were obviously intended to create, for the benefit of defendant, a climate of employee confidence and reliance upon the company's compliance with the stated procedures. In the face of these unqualified statements in PPM–8, the separate generalized disclaimer in the PPM falls short of passing muster under *Woolley*. There may be no absolute promise of continued employment, but an enforceable commitment can be found that the company will endeavor (impliedly in good faith) to avoid termination by measures such as transfer to comparable or lower-level jobs somewhere in the company. *See Nicosia v. Wakefern Food Co.*, 136 *N.J.* 401, 412–16, 643 *A.2d* 554 (1994).

The trial judge charged the jury as to the disclaimer on the first page of the Personnel Policy Manual giving the jury the option, under the facts of the case, to find whether or not PPM–8 created an agreement as to the procedures to be followed in the event of a termination and whether the procedures outlined in the manual were followed before plaintiff was terminated. In this regard, special questions were given to the jury, two of which were as follows:

> Question No. 1—Do you find that Personnel Policy Manual, PPM, created an employment contract between the plaintiff Richard M. Geldreich and defendant American Cyanamid Company?
> Question No. 2—Do you find that the defendant American Cyanamid Company failed to make a good faith effort to provide employment in accordance within the terms of the agreement, PPM8?

Each question was answered in the affirmative. The jury then went on to consider special questions relating to the issue of damages.

We need not recount the evidence during this phase of the trial other than to observe that PPM–8 was not in existence when plaintiff executed his original employment agreement in 1967. The terms of the 1967 agreement do not put plaintiff on notice

that later adopted general personnel policies disseminated and available for his review, would be deemed inapplicable as to him. Presumably, PPM–8 was not intended to be a meaningless document.

Plaintiff's supervisor was Robert Ritter. He was given the responsibility of downsizing the department. Ritter testified that PPM–8, promulgated in 1981, covered all salaried employees and he acknowledged that PPM–8 stated the "rights" of defendant's employees. The jury could properly determine that it was intended that salaried employees such as plaintiff would rely upon and accept PPM–8 as an inducement and offer to remain in the employ of defendant. *See Witkowski v. Thomas J. Lipton, Inc.,* 136 *N.J.* 385, 399, 643 *A.*2d 546 (1994).

When Ritter gave plaintiff notice of his termination, no mention was made by Ritter of plaintiff's rights under PPM–8. The jury could reasonably have believed that Ritter and defendant disregarded PPM–8 in the case of plaintiff, although he was a long-service employee who was terminated because of a reduction in force. In fact, Ritter admitted that no effort to implement or follow PPM–8 had been undertaken.

According to the plain wording of PPM–8, efforts will be made to place the employee in another job with the company, and if those efforts do not succeed, only then will the employee be informed of the decision of termination. In disregard of this obligation assumed by defendant, plaintiff was terminated outright before any measures were taken to determine if other jobs were available. On May 6, 1991, plaintiff was instructed to turn in his key and leave the building. He did so and retained counsel.

Several months after plaintiff was told to leave, and after his counsel had contacted defendant, a letter arrived from defendant, advising of a job opening. On the same day, plaintiff also received defendant's check dated July 27, 1991, representing seven weeks of unused vacation.

Plaintiff testified that defendant had a long-standing policy of never paying an employee for unused vacation until the employee

left the company. He considered the vacation pay "the last nail in the coffin" signifying "the completion of my termination" with defendant. Thus, he did not respond to the belated job interview notice because he felt that if defendant was seriously interested in rehiring him, the vacation pay would not have been issued.

The jury evidently credited plaintiff's testimony. Its verdict was not against the weight of the evidence on the contract clause.

This case significantly differs from *Ware v. Prudential Ins. Co.*, 220 *N.J.Super.* 135, 531 *A.2d* 757 (App.Div.1987), *certif. denied*, 113 *N.J.* 335, 550 *A.2d* 450 (1988), relied upon by defendant. In *Ware*, a company guide manual was held not to apply to the terminated employee, not because the employee had a written "at will" employment contract, but because it was factually shown that the company guide was intended to apply to vice-presidents of regional marketing and was not intended to be a personnel manual for district managers such as the terminated employee, who functioned at a level lower than that of a regional vice-president.

We see no reason to disturb the award of damages to plaintiff. The jury properly determined that plaintiff had a duty to mitigate damages. They took into account the number of productive working years remaining for plaintiff until retirement, assigned an equivalent dollar amount, and then used that amount to mitigate the damages arising from the failure of defendant to timely undertake the efforts required by PPM–8 before announcing to plaintiff his termination.

### III

Plaintiff cross-appeals from the trial court's dismissal of his age discrimination claim at the close of his case. His proofs endeavored to show that Ritter selected plaintiff for termination because he was biased in favor of younger employees, and that he carried further this favoritism by recommending younger employees but not plaintiff, for new positions with defendant after their termination from his department. The trial court concluded that plaintiff's evidence of discrimination was insufficient to submit to a jury.

■ A motion for dismissal at the close of plaintiff's case "shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." *R.* 4:37-2(b). Plaintiff must be afforded the benefit of all of his favorable evidence plus the reasonable inferences which it supports; if "reasonable minds could differ, the motion must be denied." *Dolson v. Anastasia,* 55 *N.J.* 2, 5, 258 *A.*2d 706 (1969).

In pertinent part, *N.J.S.A.* 10:5–12 of the LAD provides:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

(a) For an employer, because of the ... age ... of any individual ... to discharge from employment such individual ....

■ A plaintiff terminated from employment establishes a *prima facie* case of discrimination when he shows:

■ that he was in the protected ... group, [2] that he was performing his job at a level that met his employer's legitimate expectations, [3] that he nevertheless was fired, and [4] that [the employer] sought someone to perform the same work after he left.

[*Erickson v. Marsh & McLennan Co., Inc.,* 117 *N.J.* 539, 551, 569 *A.*2d 793 (1990) (quoting *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 597, 538 *A.*2d 794 (1988)).]

■ Once plaintiff has thereby established a *prima facie* case, a rebuttable presumption of discrimination is made. The ultimate burden of persuasion does not shift, but the burden of going forward shifts to the employer who must demonstrate either the reasonableness of the otherwise discriminatory act, or the presence of a non-discriminatory reason for the employer's treatment. *Goodman v. London Metals Exch., Inc.,* 86 *N.J.* 19, 30–32, 429 *A.*2d 341 (1981). *See also Kelly v. Bally's Grand, Inc.,* 285 *N.J.Super.* 422, 430, 667 *A.*2d 355 (App.Div.1995).

■ The first three prongs of the *prima facie* test are not in issue. Plaintiff was in a protected class at age fifty four; he was satisfactorily performing his job; and he was terminated. As to the fourth prong, plaintiff's evidence, if believed, was sufficient to show that his job functions survived; and that a younger employee, aged forty four, assumed supervision of clerical functions, such as travel and living expenses and accounts payable; that an employee, aged forty eight, assumed responsibility for his stan-

dard cost generation system duties; and that his responsibility in helping to prepare the Domestic Balance Sheet was given to another employee. Giving effect to the legitimate inferences favorable to plaintiff as required by *R.* 4:37–2(b), a jury could reasonably have determined that plaintiff's job functions survived. It was not incumbent upon plaintiff to prove that the persons who succeeded to his job functions were of equal or lesser qualifications. *Erickson, supra,* 117 *N.J.* at 554, 569 *A.*2d 793 (1990).

Plaintiff was able to show that substantially younger workers were retained when he was discharged in February 1991. In plaintiff's group of nine, plaintiff, the oldest at fifty four, was the only person selected by Ritter to be dismissed. Eight others were retained.

■ In our view, plaintiff satisfied all the elements of a *prima facie* age discrimination case. It is not for us on appeal to weigh the arguments of legitimate, non-discriminatory reasons for plaintiff's termination that were advanced by defendant. Accordingly, we reverse the dismissal of plaintiff's age discrimination claim and remand for trial on that issue.

On retrial, an unredacted version of exhibit P–29 should be made evidential. Exhibit P–29 consisted of three pages of handwritten notes by Ritter addressed to J.W. Hirsh, the personnel administrator who had requested of Ritter special personal information relating to the recently discharged employees. Ritter responded in P–29 listing five employees, including plaintiff, their ages, years of service, and other highly personal information. Ritter added remarks about the possible re-hiring of the two younger persons. The record does not contain the reasons for the trial judge only allowing a redacted version of exhibit P–29, containing only notations about plaintiff, into evidence.

■ Although Ritter referred to unredacted parts of exhibit P–29 in his testimony, when dismissing plaintiff's claim for age discrimination, the judge did not take the whole of exhibit P–29 into account. That exhibit was relevant on the issue of favorable treatment of younger employees. A showing of preferences for

younger employees in a business organization may constitute circumstantial evidence of age discrimination. *See, e.g., Holley v. Sanyo Mfg. Inc.,* 771 *F*.2d 1161, 1166 (8th Cir.1985).

We see no merit in issues raised by defendant as to (a) the framing of an additional special interrogatory for submission to the jury as to whether plaintiff would have accepted a job with defendant had one been offered; (b) the full extent of plaintiff's responsibility to mitigate damages; and (c) the amount of the damage verdict. *R.* 2:11–3(e)(1)(A),(B), and (E).

For the reasons stated, the entry of the net damage award of $315,000 from which defendant appeals is affirmed. We reverse the dismissal of plaintiff's claim for age discrimination and remand for trial. We do not retain jurisdiction.