David WRIGHT, Plaintiff,

v.

L–3 COMMUNICATIONS CORPO-
RATION, and John Does 1–10,
Defendants.

Civil Action No. 00–5937.

United States District Court,
D. New Jersey.

Oct. 21, 2002.

Laura D. Ruccolo, Esq., Kenney & Kearney, LLP, Cherry Hill, NJ, for Plaintiff, David Wright.

John K. Diviney, Esq., Alan B. Pearl & Associates, P.C., Syosset, NY, John B. Livelli, Esq., Robinson & Livelli, Esqs., Newark, NJ, for Defendants, L–3 Communications Corporation and John Does 1–10.

## OPINION

ORLOFSKY, District Judge.

### I. INTRODUCTION

Plaintiff, David Wright ("Wright"), has sued his former employer, L–3 Communications Corporation ("L–3"), for age discrimination, in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5–1, *et seq.* (2002). L–3 has now moved for summary judgment. In deciding L–3's motion for summary judgment, I must address an unresolved question of the governing New Jersey state law—namely, what is the fourth element of a *prima facie* case of age discrimination under the LAD? Based on my review of the case law—specifically, a July 2001 decision of the Superior Court of New Jersey, Appellate Division—I must dissent from an earlier decision by my esteemed colleague, Judge Wolin, who applied a "sufficiently younger" standard to the fourth element of the *prima facie* age discrimination case under the LAD. *See Swider v. Ha–Lo Indus., Inc.,* 134 F.Supp.2d 607 (D.N.J.2001). Instead, I hold that in order to satisfy the fourth element of a *prima facie* case of age discrimination under the LAD, an LAD plaintiff must only show that his employer

sought others to perform the same work after he was terminated from his position.

Applying this standard, I find that the summary judgment record presents genuine issues of material fact, and I shall deny L–3's motion for summary judgment.

## II. FACTS AND PROCEDURAL HISTORY

Defendant L–3 designs and manufactures various products, including gyros, wheels, and sensors, to guide, position, navigate and control satellites, space launch vehicles, the Hubble space telescopes, land rockets, and the space shuttle international space center. *See* Def.'s 56.1 Statement ¶¶ 3,5. Wright, who was employed as the Director of Business Development for Space Products in L–3's Teterboro, New Jersey office, *see* Pl.'s 56.1 Statement ¶¶ 1, 43; Certif. of David J. Wright 6/11/02 ("Wright Certif.") ¶ 14, claims he was throttled out of L–3 because of his age.

Wright did not begin his career in space technology at L–3. He was previously employed in the Space and Navigation Division of another company, Allied Signal. *See* Wright Certif. ¶ 2. Allied Signal sold this division in 1999, and the sale included certain employees, including Wright, who were transferred along with the Space and Navigation Division. *Id.* ¶ 4. After L–3 purchased the Allied Signal division, Wright became an L–3 employee in January 2000. *Id.* ¶ 2.

Not long after Wright joined the company, on or about April 17, 2000, L–3 terminated him, at the age of sixty. *See* Def.'s 56.1 Statement ¶ 137; Wright Certif. ¶ 5. According to L–3, Wright's termination was not related to his performance, *see* Wright Certif. ¶ 5, but because the market for space products was "flat," *id.* ¶ 9. Wright contests this characterization of the market for space products and notes

that after his termination, L–3 continued to pursue new business opportunities in the Space and Navigation Division. *See id.* ¶¶ 17–27. Additionally, three other L–3 employees, Herb Califano, Neil Piscatelli, and Mark Pisani, began soliciting new space opportunities at conventions and trade shows for which Wright, as Director of Business Development for Space Products, had previously been responsible. *See id.* ¶¶ 31–34. Wright contends that these individuals had little, if any, business development experience. *Id.*

This Court has jurisdiction over this action based on the diverse citizenship of the parties and the requisite amount in controversy, pursuant to 28 U.S.C. § 1332 (2002). As a federal court sitting in diversity, this Court must apply state substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). I have considered the submissions of the parties and decided this motion on the papers without oral argument pursuant to Fed.R.Civ.P. 78 (2002). For the reasons set forth below, Defendants' Motion for Summary Judgment shall be denied.

## III. STANDARD FOR SUMMARY JUDGMENT

The legal standard governing summary judgment is well-settled. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 2002); *see also Anderson v. Consol. Rail Corp. ("Conrail"),* 297 F.3d 242, 247 (3d Cir.2002). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Conrail,* 297 F.3d at 247 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if it bears on an essential element of the plaintiff's claim. *Abraham v. Raso,* 183 F.3d 279, 287 (3d Cir.1999) (*citing Anderson,* 477 U.S. at 248–251, 106 S.Ct. 2505). Thus, to survive a motion for summary judgment, the party contesting the motion must demonstrate a dispute over facts that might affect the outcome of the suit. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995) (*citing Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505).

When considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In evaluating the evidence, the court must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir.2002) (quoting *Bartnicki v. Vopper,* 200 F.3d 109, 114 (3d Cir.1999)); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Notwithstanding this deference towards the non-movant, "[t]he mere existence of a scintilla of evidence in support of the [movant]'s position will be insufficient" to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Summary judgment is proper "if after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Conrail,* 297 F.3d at 247

(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

After one party has filed a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor. *Groman,* 47 F.3d at 633 (*citing Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505). Moreover, "[w]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).[1] "If the adverse party does *not* so respond, summary judgment, if appropriate, shall be entered against the adverse party." *Id.*

## IV. THE LEGAL STANDARD GOVERNING AGE DISCRIMINATION CLAIMS UNDER THE NEW JERSEY LAW AGAINST DISCRIMINATION

### A. THE NEW JERSEY LAW AGAINST DISCRIMINATION

The New Jersey Law Against Discrimination ("LAD") recognizes the opportunity to obtain employment as a civil right. *See Bergen Commercial Bank v. Sisler,* 157 N.J. 188, 200, 723 A.2d 944, 949 (1999). The statute provides, in relevant part:

It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination:

a. For an employer, because of the . . . age, . . . of any individual . . . to refuse to hire or employ or to bar or to dis-

---

1. Local Civil Rule 56.1 of this Court also requires that, on motions for summary judgment, each side must submit statements identifying material facts as to which there does or does not exist a genuine issue. *See id.*

(Gann 2002). "[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor,* 85 F.Supp.2d 391, 408 n. 26 (D.N.J.2000).

charge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment ...

N.J.S.A. § 10:5–12(a) (West 2002).

Although Wright brought this action against L–3 under the LAD and not any federal anti-discrimination statute, the LAD draws significantly from federal anti-discrimination law. *See Maiorino v. Schering–Plough Corp.*, 302 N.J.Super. 323, 345, 695 A.2d 353, 364 (App.Div.1997). Thus, Wright's LAD claim is appropriately analyzed by examination of federal cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, provisions of which were modeled after Title VII. *See Giammario v. Trenton Bd. of Educ.*, 203 N.J.Super. 356, 361, 497 A.2d 199, 202 (App.Div.1985), *certif. denied*, 102 N.J. 336, 508 A.2d 212, *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986); *see also Sisler*, 157 N.J. at 200, 723 A.2d at 949.

The Supreme Court of New Jersey has adopted the three-stage inquiry set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "as a starting point" in analyzing claims under the LAD. *Sisler*, 157 N.J. at 210, 723 A.2d at 955 (quoting *Andersen v. Exxon Co.*, 89 N.J. 483, 492, 446 A.2d 486 (1982)). The New Jersey Supreme Court has recognized a need to harmonize the LAD and federal discrimination law in order to assure a reasonable degree of symmetry and uniformity in the law. *See Sisler*, 157 N.J. at 212, 723 A.2d at 956; *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 107, 570 A.2d 903, 912 (1990). Where appropriate, however, the New Jer-

sey courts have modified the elements of the *McDonnell Douglas* framework. *See McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 827–28, 830 (3d Cir.1994).

■ There are three stages of inquiry under the *McDonnell Douglas* framework. Under the first stage, a plaintiff must prove, by a preponderance of the evidence, the four elements of a *prima facie* case of discrimination, as discussed *infra*. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Establishment of a *prima facie* case gives rise to a presumption that the employer unlawfully discriminated against the employee. *See Sisler*, 157 N.J. at 210, 723 A.2d at 955; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The second stage of the *McDonnell Douglas* inquiry requires the employer to come forward with admissible evidence of a legitimate, non-discriminatory reason for its rejection of the employee. *See Sisler*, 157 N.J. at 210–11, 723 A.2d at 955; *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. "Where the employer produces such evidence, the presumption of discrimination disappears." *Sisler*, 157 N.J. at 211, 723 A.2d at 955.

■ In the third and final stage of the *McDonnell Douglas* inquiry, the burden of production then shifts back to the employee, who has "the opportunity to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." *Sisler, id.* (citation omitted). An employee can meet this burden either by persuading the court directly, by showing that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation

is unworthy of credence. *Id.* (quotations and citations omitted).

■ Although the burden of production shifts throughout the *McDonnell Douglas* inquiry, the employee-plaintiff has at all times the burden of proving that the adverse employment action was caused by purposeful or intentional discrimination. *Sisler*, 157 N.J. at 211, 723 A.2d at 955; *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. In meeting this burden, the plaintiff need not prove that age was the sole or exclusive consideration for the discharge; the plaintiff need only show by a preponderance of the evidence that age made a difference in that decision. *See Sisler*, 157 N.J. at 211, 723 A.2d at 955 (quotations and citations omitted).

## B. WRIGHT'S *PRIMA FACIE* CASE OF AGE DISCRIMINATION

The *McDonnell Douglas* framework, as modified by the Supreme Court of New Jersey, requires a plaintiff to satisfy four elements by a preponderance of the evidence to establish a *prima facie* case of age discrimination. *See Sisler*, 157 N.J. at 210, 723 A.2d at 955. First, Wright must demonstrate that he belongs to a protected class. *Id.* Second, he must show he was qualified for the position in question. *Id.* Third, Wright must demonstrate that he was discharged despite his adequate qualifications. *Id.*, 157 N.J. at 212, 723 A.2d at 956. Finally, Wright must demonstrate that the employer sought others to perform the same work after he was terminated from his position. *See Petrusky v. Maxfli Dunlop Sports Corp.*, 342 N.J.Super. 77, 80, 775 A.2d 723, 725 (App.Div. 2001), *certif. denied*, 170 N.J. 388, 788 A.2d

772 (2001); *see also Reynolds v. Palnut Co.*, 330 N.J.Super. 162, 167, 748 A.2d 1216, 1218 (App.Div.2000). The burden at this initial stage is not meant to be onerous, but requires a plaintiff "to demonstrate to the court that [the] plaintiff's factual scenario is compatible with discriminatory intent—i.e., that *discrimination could* be a reason for the employer's action." *Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 508 (3d Cir.1996).

Unlike federal discrimination claims brought under the ADEA, the first LAD element for a *prima facie* case of age discrimination is not limited to employees age forty or older.[2] An LAD plaintiff must still demonstrate that he or she is a member of a protected class, but unlike the ADEA, the LAD reaches discrimination based on youth as well.[3] *See Sisler*, 157 N.J. at 218, 723 A.2d at 959 (applying reverse-discrimination analysis to age discrimination claim brought by twenty-five-year-old plaintiff). Wright, who was sixty-years old at the time of his termination from L–3, is a member of the class protected by the LAD. "[T]hat older workers form the presumptive protected class under the anti-age-discrimination provisions of the LAD is clear." *Sisler*, 157 N.J. at 217, 723 A.2d at 958. Wright is older than forty, as required by the ADEA, and is within the range of "older" plaintiffs who have benefited from the LAD's prohibition against age discrimination. *See e.g., Murray v. Newark Hous. Auth.*, 311 N.J.Super. 163, 174, 709 A.2d 340, 345 (1998) (applying LAD to sixty-five year-old plaintiff); *Greenberg v. Camden County Vocational & Technical Sch.*, 310 N.J.Super. 189, 201, 708 A.2d 460, 466 (App.Div.1998)

---

**2.** The prohibitions of the federal Age Discrimination in Employment Act ("ADEA") only apply to employees who are at least forty years of age. *See* 29 U.S.C. § 630 (West 2002).

**3.** *See Hamilton v. Caterpillar Inc.*, 966 F.2d 1226 (7th Cir.1992) (rejecting ADEA reverse-discrimination claim based on youth).

(applying LAD to forty-eight year-old plaintiff); *Geldreich v. American Cyanamid Co.*, 299 N.J.Super. 478, 489, 691 A.2d 423, 429 (App.Div.1997) (applying LAD to fifty-four year-old plaintiff).

Second, the parties do not dispute that Wright was qualified for the Director of Business Development for Space Products position that he held prior to his termination. According to Christopher Clayton, L–3's former President of the Space and Navigation Division, Wright's position was eliminated due to a downturn in the space business and not for performance reasons. *See* Decl. of Christopher Clayton 6/4/02 ("Clayton Decl.") ¶¶ 22–24, 27. The responsibilities of Wright's eliminated position were purportedly reallocated to the head of space programs and the program managers. *Id.* ¶ 23.

Third, Wright clearly suffered an adverse employment decision because he was involuntarily terminated on or about April 17, 2000. *See* Wright Certif. ¶ 5.

█ The last element required to establish a *prima facie* case of age discrimination under the LAD warrants further discussion. A plaintiff can satisfy the fourth and final element of the *prima facie* case of age discrimination by showing that the employer sought others to perform the same work that the plaintiff did after the plaintiff was removed from his position. *See Petrusky*, 342 N.J.Super. at 80, 775 A.2d at 725; *Catalane v. Gilian Instrument Corp.*, 271 N.J.Super. 476, 496–97, 638 A.2d 1341, 1351–52 (App.Div.1994), *certif. denied*, 136 N.J. 298, 642 A.2d 1006 (1994).

This fourth element under the LAD deviates from the standard the Third Circuit applies to age discrimination claims under the federal ADEA. In *Sisler*, a reverse age-discrimination case, the Supreme Court of New Jersey explained that the fourth element of the *prima facie* test does not focus on whether the plaintiff was replaced with someone from outside the protected class: "[U]nder the LAD, which specifies no qualifying age, courts have modified the fourth element to require a showing that the plaintiff was replaced with 'a candidate sufficiently younger to permit an inference of age discrimination.'" *Id.*, 157 N.J. at 213, 723 A.2d at 956. In *Reynolds*, 330 N.J.Super. 162, 748 A.2d 1216, however, the Appellate Division limited *Sisler's* "sufficiently younger" articulation of the fourth *prima facie* element to cases of reverse age-discrimination. *Id.*, 330 N.J.Super. at 168, 748 A.2d at 1219. *Reynolds* noted that in traditional cases of age discrimination brought by older plaintiffs, a plaintiff could satisfy the fourth *McDonnell Douglas* element simply by showing that the employer sought others to perform the same work after the employee had been removed. *Id.*

Interpreting the LAD in *Swider v. Ha-Lo Indus., Inc.*, 134 F.Supp.2d 607 (D.N.J. 2001), my distinguished colleague, Judge Wolin, rejected the *Reynolds* view. Judge Wolin reiterated the *Sisler* standard for both reverse age-discrimination cases and traditional age-discrimination cases under the LAD, holding that "in order to satisfy the fourth prong of the *McDonnell Douglas prima facie* case, plaintiff must show that he was replaced by someone sufficiently younger to create an inference of unlawful age discrimination." *Swider*, 134 F.Supp.2d at 625.

Four months after *Swider* was decided, however, in *Petrusky*, 342 N.J.Super. 77, 775 A.2d 723, the Appellate Division rejected Judge Wolin's reasoning. There, the court found that the *Swider* view placed too much emphasis on how old or young the employee-plaintiff's replacement was, and instead focused on "whether the claimant's age, in any significant way,

'made a difference' in the treatment he was accorded by his employer." *Petrusky,* 342 N.J.Super. at 82, 775 A.2d at 726. The *Petrusky* opinion, *id.,* relied on the following language from the New Jersey Supreme Court's opinion in *Sisler:*

> The fact that one person in the protected class has lost out to another person in the protected class is irrelevant, so long as he has lost out *because of his age.* Or to put the point more concretely, there can be no greater inference of *age* discrimination (as opposed to "40 or over" discrimination) when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is a not a proper element of the *McDonnell Douglas* prima facie case.

*Sisler,* 157 N.J. at 212, 723 A.2d at 956 (quoting *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). Although this language was written in the context of analyzing an ADEA claim, its focus on discrimination "because of age" is relevant to age discrimination claims under the LAD as well. Furthermore, *Sisler* noted that, as a characteristic that varies over time, age can be a ground for subtle patterns of discrimination:

> Seldom will a sixty-year-old be replaced by a person in the twenties. Rather the sixty-year-old will be replaced by a fifty-five year old, who, in turn, is succeeded by a person in the forties, who will also be replaced by a younger person.

*Sisler,* 157 N.J. at 212–13, 723 A.2d at 956 (quoting *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir.1980)). Thus, because replacing the discharged employee with another member of the protected class does not obviate the possibility of age discrimination, the proper focus of attention is on the age of the plaintiff and not on the age of the employee who replaces the terminated plaintiff. *Cf. Keller v. Orix Credit Alliance,* 130 F.3d 1101, 1118–19 (3d Cir.1997) (en banc) (Lewis, J., dissenting) (providing examples of how discriminatory animus can be present even though the replacement is of the same protected class as the discharged employee).

Thus, the *Petrusky* court concluded that only in cases of reverse age discrimination under the LAD is a plaintiff required to show that he or she was replaced with a candidate of a different age. *See id.,* 342 N.J.Super. at 81, 775 A.2d at 725. In traditional discrimination cases, the *Reynolds* standard applies, and a plaintiff satisfies the fourth element of the *prima facie* case by showing that his or her employer sought others to perform the plaintiff's work after the plaintiff was removed. *See Petrusky,* 342 N.J.Super. at 82, 775 A.2d at 725. As *Petrusky* explained:

> The focal question is not necessarily how old or young the claimant or his replacement was, but rather whether the claimant's age, in any significant way, made a difference in the treatment he was accorded by his employer.

*Id.,* 342 N.J.Super. at 82, 775 A.2d at 726.

I find the Appellate Division's reasoning in the recent *Petrusky* decision to be persuasive. Although this Court, in construing the LAD, is guided by federal anti-discrimination caselaw, *see Giammario,* 203 N.J.Super. 356, 361, 497 A.2d 199, 202; *Sisler,* 157 N.J. at 200, 723 A.2d at 949–50, on questions of New Jersey state law, I will defer to and adopt the Appellate Division's interpretation of the New Jersey Supreme Court's decision in *Sisler.* This is particularly appropriate because the language of the LAD differs from the ADEA, in that the ADEA applies only to workers forty-years of age and older. *See* 29

U.S.C. § 630 (2002). As the New Jersey Supreme Court noted in *Sisler*, the LAD does not impose the forty-year minimum age requirement.[4]

In cases brought under the ADEA, courts apply the "sufficiently younger" standard to establish the fourth prong of the *prima facie* case, so as not to be constrained by the boundaries of that statute's forty-year age threshold. As explained by the Supreme Court in *O'Connor, supra*, this standard recognizes the fact that, even if a plaintiff is replaced by someone else within the protected class of persons age forty and above, the plaintiff may still be a victim of age discrimination if he is replaced by someone within the protected class, but "sufficiently younger." Because the LAD takes a more expansive view of age discrimination than does the ADEA, encompassing age discrimination against younger employees, as well as older employees, the fourth element of the *prima facie* case does not focus on whether a plaintiff is sufficiently younger. Instead, the fourth *McDonnell Douglas* element is satisfied in traditional cases if the employer sought others to perform the same work that the plaintiff performed after the plaintiff was terminated.

Under *Sisler* and *Petrusky*, however, the LAD adopts a variant of the "sufficiently younger" standard for the fourth element of a prima facie case in non-traditional cases of age discrimination against younger employees. Such cases are analyzed as reverse-discrimination cases, and a heightened standard for the fourth *prima facie* element applies, requiring a plaintiff to demonstrate that he was replaced by someone sufficiently older. *See*

*Reynolds*, 330 N.J.Super. at 168, 748 A.2d at 1219. Such a heightened standard applies because the plaintiff is not a member of a historically disadvantaged class. *See id.* In the ordinary LAD case, such as Wright's, based on discrimination against an older worker, there is no need for a heightened standard to satisfy the fourth element of the *prima facie* case of age discrimination.

■ L–3 argues that Wright cannot demonstrate that he was replaced by someone "sufficiently younger." *See* Def.'s Mem. in Supp. of Summ. J. at 23. As I have explained above at some length, this is not the governing standard in traditional age discrimination cases brought under the LAD. The proper standard for establishing the fourth *prima facie* element is whether the employer sought others to perform the plaintiff's work after the plaintiff was removed. *See Petrusky*, 342 N.J.Super. at 80, 775 A.2d at 725. To meet this element, a plaintiff need not show that his job functions were reassigned to a single employee after the plaintiff's termination, but can demonstrate that multiple employees assumed responsibility for the same job functions that the plaintiff performed prior to termination. *See e.g., Geldreich*, 299 N.J.Super. at 489–90, 691 A.2d at 429.

John Donne, L–3's Director of Human Resources of the Space and Navigation Division, explained that after Wright was terminated, the responsibilities of his position were reallocated to at least twelve other employees—the program managers and Mark Pisani, the head of space business. *See* Aff. of John Donne 5/15/02 ("Donne Aff.") ¶ 31; *see also* Aff. of Mark Pisani 5/15/02 ("Pisani Aff.") ¶ 21. All of

---

4. Age is addressed twice in the LAD. N.J.S.A. § 10:5–2.1 states that the provisions of the statute do not require the employment of any person under the age of eighteen, and N.J.S.A. § 10:5–12(a) states that nothing in the statute shall be construed to bar an employer from refusing to accept for employment or to promote any person over the age of seventy. *Id.* (West 2002).

these employees were younger than Wright, including Pisani, who is twenty-two years younger than Wright. *See* Donne Aff. ¶ 31. Moreover, Pisani began to perform space business development functions in April 2000, at approximately the same time that Wright was terminated. *See* Pisani Dep. 20:22 to 21:25 (attached as Ex. 1 to Certif. of Laura D. Ruccolo 6/5/02). These functions were previously performed by Wright, as Director of Business Development for Space Products. *See* Clayton Decl. ¶ 12. Indeed, prior to his termination, Wright "was responsible for pursuing business opportunities with new customers," *id.*, and follow-on business from existing customers, *see* Wright Certif. ¶ 14.

In addition to Pisani and the program managers, Herb Califano, L–3's Director of Business Development for Tactical Battlefield areas, also assumed some of Wright's previous functions. *See* Wright Certif. ¶¶ 31–32; Clayton Decl. ¶ 29. After his termination, in March 2001, Wright encountered Califano at two space business trade shows, where Califano was actively seeking new space-products business on behalf of L–3. See Wright Certif. ¶¶ 31–32. Moreover, Pisani and Neil Piscatelli, a Program Manager, were also at one of these trade shows seeking new space business for L–3. *Id.* ¶ 31.

Contrary to the arguments of defense counsel, Wright does not have to show that "he is *similarly situated* in terms of qualifications and position to the younger employees retained." Def.'s Reply Br. at 1. This argument was explicitly rejected in *Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 510 (3d Cir.1996), in which the court explained that the fact that similarly situated employees are retained may bolster a party's case, but that a plaintiff need not make such a showing to establish a *prima facie* case. *Id.* Moreover, the fact

that Wright was the only person in his position is not fatal to his *prima facie* case, as explained in *Marzano*:

Consider, for instance, the situation of an employee who performs tasks in the firm that no one else performs, and whose functions become obsolete. In that case, the employee's "uniqueness" may explain why he or she, and not an unprotected colleague, was terminated. Such a scenario, however, goes to the employer's reason for its action, and may be presented to the judge after the plaintiff has made his or her *prima facie* case, when the burden switches to the employer to proffer a nondiscriminatory reason for its action.

*Id.* at 511.

Wright has satisfied the fourth element required to establish a *prima facie* case of age discrimination under the LAD because he has demonstrated that, after his termination, other L–3 employees performed the same job functions that Wright had performed prior to his termination. Thus, I find that Wright has established a *prima facie* case of age discrimination under the LAD.

## B. WHETHER L–3 PROFFERED A PRETEXTUAL REASON FOR WRIGHT'S TERMINATION

Under the second stage of the *McDonnell Douglas* inquiry, after the plaintiff establishes a *prima facie* case of age discrimination, the employer must come forward with admissible evidence of a legitimate, non-discriminatory reason for its rejection of the employee. *See Sisler*, 157 N.J. at 210–11, 723 A.2d at 955; *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. Christopher Clayton, L–3's President, explained that Wright's position was eliminated due to the downturn in the space business, based on Clayton's "business judgment and evaluation of [the] relative

weakness of the space business for growth in the immediate future." Clayton Decl. ¶¶ 22–24. In an April 6, 2000 memo to all L–3 employees, Clayton proclaimed: "The growth potential in Space Business is very flat at the moment and we are going to consolidate the organization to optimize our ability to gain follow-on business; for example, in classified programs." *Id.* ¶ 20. This downturn in the space business and L–3's decision to focus on its other areas of business presents a legitimate, non-discriminatory reason for L–3's termination of Wright, its Director of Space Business Development.

Under the third and final stage of the *McDonnell Douglas* inquiry, the burden of production shifts back to the plaintiff. "If a plaintiff who has established a *prima facie* case can raise enough suspicions that the employer's proffered reasons for termination were pretextual, the motion for summary judgment should [ ] be denied." *Greenberg v. Camden County Vocational and Technical Schs.*, 310 N.J.Super. 189, 200, 708 A.2d 460, 466 (App.Div.1998) (citing *Bray v. Marriott Hotels*, 110 F.3d 986, 990–91 (3d Cir.1997)); *see also Sisler*, 157 N.J. at 211, 723 A.2d at 955. The standard for evaluating "pretext" under the LAD is:

> [W]hether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably could support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence necessarily leads to [the] conclusion that the employer did act for discriminatory reasons.

*Greenberg*, 310 N.J.Super. at 200, 708 A.2d at 466 (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.1987)). "An employee may meet this burden either by persuading the court directly that a discriminatory reason more likely motivated the employer or indirectly by showing that

the employer's proffered explanation is unworthy of credence." *Sisler*, 157 N.J. at 211, 723 A.2d at 955 (internal quotations and citations omitted).

Wright has not presented direct evidence that L–3 discriminated against him on the basis of age, but Wright has presented sufficient indirect evidence of pretext to create a genuine issue of material fact that withstands L–3's motion for summary judgment. This is because L–3's proffered reason for terminating Wright was the downturn in the space technology business, *see* Clayton Decl. ¶ 24, but Wright has presented evidence that L–3 continued to pursue space business after his termination.

Clayton testified that L–3 was "not going to pursue new business in space, and, therefore, did not need a business development function." Clayton Dep. 85:18 to 86:3. In April 2000, however, at approximately the same time Wright was terminated from L–3, Mark Pisani was promoted to Director of Space Products. *See* Pisani Dep. 13:17 to 13:20. Pisani is twenty-two years younger than Wright. *See* Donne Aff. ¶ 31; Wright Certif. ¶ 5. Since April 2000, Pisani approached approximately seven new customers to do space-products business with L–3. *See* Pisani Dep. 21:9 to 21:17. These new business solicitations began as early as one month after Wright's termination, in May and June of 2000. *Id.* 53:2. These actions contradict L–3's claim that it intended to focus on developing other areas of business due to the downturn in space products.

There is also an issue of material fact as to whether there was indeed a downturn in the space-technology business at the time of Wright's termination. In January 2000, Wright identified a number of new space opportunities to Clayton in the areas of satellite communications, satellite remote

sensing, and launch vehicles. *See* Wright Certif. ¶ 13. Additionally, Wright had specified four space projects that L–3 actively solicited and negotiated from April to July of 2000. *Id.* ¶¶ 20–23. Viewing the evidence in the summary judgment record in a light most favorable to Wright, the non-moving party in this motion for summary judgment, I find that Wright has presented sufficient evidence of inconsistencies in L–3's proffered explanation for his discharge to survive a motion for summary judgment.

In summary, Wright has established a *prima facie* case of age discrimination under the LAD, and he has presented sufficient evidence to create a genuine issue of material fact as to whether L–3's proffered reason for Wright's discharge, a downturn in the space business, was a pretext for age discrimination. Accordingly, I shall deny L–3's Motion for Summary Judgment.

## V. CONCLUSION

For the reasons stated above, I shall deny the Motion for Summary Judgment of Defendants, L–3 Communications Corporation and John Does 1–10. The Court shall enter an appropriate form of Order.

### ORDER

This matter having come before the Court on the Motion of Defendants, L–3 Communications Corporation and John Does 1–10, for Summary Judgment, pursuant to Fed.R.Civ.P. 56, John K. Diviney, Esq., ALAN B. PEARL & ASSOCIATES, P.C., and John B. Livelli, Esq., ROBINSON & LIVELLI, ESQS., appearing on behalf of Defendants, and Laura D. Ruccolo, Esq., KENNEY & KEARNEY, LLP, appearing on behalf of Plaintiff, David Wright; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 21st day of October, 2002, hereby ORDERED that the Motion for Summary Judgment of Defendants, L–3 Communications Corporation, is DENIED.