**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3690-19

JOY SPRIGGS,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

CITY OF PLAINFIELD, and
ADRIAN O. MAPP, Mayor of the
City of Plainfield,

      Defendants-Appellants/
      Cross-Respondents,

and

REBECCA WILLIAMS,
COUNCIL PRESIDENT,
CORY STORCH, COUNCILMAN
2ND WARD, JOYLETTE
MILLS-RANSOME,
COUNCILWOMAN AT LARGE,
2ND & 3RD WARDS, CHARLES
MCCREA, COUNCILMAN
3RD WARD, R. ALLAN SMILEY,
CITY ADMINISTRATOR,

      Defendants.

Submitted October 26, 2021 – Decided January 3, 2022

Before Judges Fisher, Currier, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2710-17.

Rainone Coughlin Minchello, LLC, attorneys for appellants/cross-respondents (John F. Gillick, of counsel and on the briefs; Jeremy M. Brooks, on the briefs).

O'Connor, Parsons, Lane & Noble, LLC, attorneys for respondent/cross-appellant (Gregory B. Noble, of counsel and on the brief; Robert A. Ballard, on the brief).

PER CURIAM

Plaintiff was appointed by the City of Plainfield (City) as a municipal public defender in 2001. Her position was for a one-year term, subject to annual reappointment. She was reappointed every year and in 2007 she was appointed Chief Municipal Public Defender (CMPD).

In November 2013, defendant Adrian Mapp began his first term as mayor of the City. He reappointed plaintiff as CMPD in 2014, 2015, and 2016. After informing plaintiff he did not intend to reappoint her for the 2017 term, Mapp appointed, and the City council approved, a new CMPD – a male.

2

A-3690-19

Thereafter, plaintiff filed a complaint against all defendants alleging gender discrimination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49; handicap discrimination in violation of the LAD; violation of the New Jersey Family Leave Act, N.J.S.A. 34:11B-11 to -16; violation of Plainfield municipal ordinance § 11:19-1; and violations of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 to -4.14, and the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a to -56a41.

After the close of discovery, all defendants moved for summary judgment. On January 10, 2020, the trial court denied the City and Mapp's motion regarding the gender discrimination claim and the City's motion as to the violation of the municipal ordinance claim but granted summary judgment on the remaining counts. The court granted summary judgment to the remaining individual defendants on all counts. Mapp and the City's subsequent motion for reconsideration was denied.

Prior to the commencement of trial, plaintiff withdrew her claim against the City for the violation of an ordinance, stating it was "subsumed" into the LAD claim. The first trial resulted in a mistrial after the jury could not reach a verdict. Thereafter, a second jury returned a verdict in plaintiff's favor, and she was awarded attorney's fees and costs.

3

Defendants Mapp and the City (collectively defendants) appeal the denial of their pre-trial motion for summary judgment, as well as certain evidentiary rulings at trial. In a cross-appeal, plaintiff challenges the dismissal of her claim for punitive damages, as well as the amount of the attorney's fees award.

In our de novo review of the summary judgment ruling, we reverse the trial court's denial of defendants' motion. Defendants articulated legitimate, non-discriminatory reasons for their decision not to renew plaintiff's appointment, and the non-reappointment of plaintiff was sanctioned under N.J.S.A. 2B:24-4 (stating a municipal public defender serves for a term of one year and continues to serve until reappointed or the appointment of a successor).

Plaintiff did not establish defendants' reasons for the non-reappointment were pretextual. Her sole proffer that defendants' reasons were pretextual was that plaintiff's successor was male. In light of the presumptive one-year term accorded under the statute, and the lack of any other evidence, that scant proffer of pretext was insufficient to support plaintiff's claim of gender discrimination. Therefore, we reverse the denial of defendants' summary judgment motion. In light of our ruling, we need not consider any further arguments regarding the trial or raised in the cross-appeal.

A-3690-19

I.

Under the City's charter, the mayor, with the advice and consent of City council, has the power to appoint public defenders, as well as the CMPD. See Plainfield, N.J., Charter ch. C, art. III, § 3.5(a) (2018). In addition, parallel authority is provided under N.J.S.A. 40:69A-43(b), stating: "Each department shall be headed by a director, who shall be appointed by the mayor with the advice and consent of the council. Each department head shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of his successor." The CMPD is a department head position.

As stated, plaintiff was first appointed as a full-time public defender in 2001. The position was for a one-year term, subject to annual reappointment. In 2007, defendant was appointed as CMPD and she was reappointed each year until 2017.[1] At all times, the position was a 20 hour a week part-time job.

During her deposition, plaintiff acknowledged her appointments were only for one year and the mayor had the right to appoint a person of their choice for the position. She stated, regarding all of the administrations she served in,

---

[1] During his deposition, Rick Smiley, the City Administrator from 2014-2018, testified that, based on the composition of the City council in 2014-2016, Mapp may not have been able to garner the votes to approve a replacement for plaintiff. When asked about his non-reappointment in 2018, Smiley stated "I understand and believe in the power of the mayor to appoint whoever he wants to appoint."

"[y]ou know the thing with being a public defender if you create any ruffles and you have a threat. You have this fear. You may not be subject to the appointment . . . you don't make waves." She reiterated "there is a possibility that they may not appoint you the next year," and "your name won't be put up for appointment."

Mapp began his first mayoral term in 2013. At the time, plaintiff's husband was being treated in Indiana for pancreatic cancer. For the next two years until her husband died in 2015, plaintiff traveled back and forth from Indiana to New Jersey. Mapp reappointed plaintiff as CMPD in 2014, 2015, and 2016.

Plaintiff testified that prior to the end of her term in 2016, Mapp informed her he did not intend to reappoint her. During his deposition, Mapp explained that he decided to appoint a new CMPD because it was "my prerogative to appoint all members of the administration." He stated he was looking for "people who best fit into the vision that [he had] for the City of Plainfield," and plaintiff did not fit that vision. Mapp said he was looking for people who could best help him "move the city forward," and "help [him] to achieve the goals of the City of Plainfield as [he saw] them," and plaintiff "was not the person that [he] was looking for."

A-3690-19

Mapp further explained that plaintiff "did not fit what I was looking for in a member of the judicial branch or as a part of my administration, generally speaking." He stated he expected to work "with [his] own team of people that [he had] the confidence would be an asset to . . . achieving [his] stated goals and objectives, [his] vision for the city," and that did not include plaintiff. He further explained that as mayor, he had "the sole prerogative under the charter to choose people that [he] believe[d] were best qualified to work with [him] and to help [him] . . . carry the city forward, and [plaintiff] was not one of those individuals." He said it was "[n]o different from Governor Murphy choosing not to appoint or reappoint people from the Christie administration."

In 2017, Mapp appointed, and the City council confirmed, a male attorney who did not live in Plainfield to the position of CMPD.[2] Mapp said he considered lawyers in Plainfield for the position but did not find anyone who "fit the role of municipal public defender and who would be a good fit with the administration."

Plaintiff did not know if Mapp considered other names, male or female, in addition to the man he ultimately appointed in 2017. She testified she

---

[2] The City council passed a residency waiver to permit the appointment of the new CMPD.

A-3690-19

believed she was the victim of gender discrimination because she had performed the job of CMPD for a long time and she was replaced with a male. Plaintiff stated Mapp had never made any gender insensitive comments to her.

As part of the summary judgment record, defendants included resolutions memorializing actions taken by the City council during Mapp's mayoral term. On the same date plaintiff was reappointed in 2015, Mapp appointed a female municipal court judge and reappointed a female municipal prosecutor. The women were reappointed along with plaintiff in 2016. The documents reflect a number of female appointments to various boards and commissions. Mapp also testified he replaced several male members of his cabinet with female appointments in 2018.

## II.

Defendants filed for summary judgment, contending there were no genuine issues of material facts regarding plaintiff's gender discrimination claim under the LAD. In a written statement of reasons accompanying the January 10, 2020 order denying the motion in part, the judge found plaintiff had established a prima facie case of gender discrimination: she was a female – a member of a protected class; she was qualified to perform the work and had worked in the position of CMPD for fifteen years; she was not reappointed to the position

8

which the court concluded was tantamount to a discharge; and she was replaced by a male lawyer.

The court then turned to defendant's evidence of a non-discriminatory explanation for plaintiff's non-reappointment. The court reviewed the reasons presented by Mapp in his deposition as set forth above and found:

> Mapp failed to provide any legitimate reason and question of fact surrounding the reasons in the present matter as to why he did not re-appoint [p]laintiff besides that he has a statutory right to appoint a [p]ublic [d]efender of his choosing to serve during his term and this appointment is per se legitimate under N.J.S.A. 40:69A-43(b) and that she [did] not "fit" his administration.

The trial judge concluded defendants had failed to meet their burden of producing evidence of a non-discriminatory reason for the non-reappointment. Therefore, he did not consider defendants' proffer of pretext. The judge denied defendants' motion for summary judgment as to the gender discrimination claims.

Defendants moved for reconsideration, asserting they met their burden of producing a non-discriminatory reason for plaintiff's non-reappointment and therefore the court erred in failing to analyze the issue of pretext.

In a February 18, 2020 oral decision, the judge reiterated Mapp's deposition testimony and again found defendants had not established a non-

discriminatory explanation for their actions regarding plaintiff's appointment. Therefore, he stated "there has been no new evidence presented on this motion for reconsideration that would change the [c]ourt's reasoning."

But the court added:

> Assuming arguendo that defendant[s] did meet their burden of showing a non-discriminatory reason for [their] employment decision and the burden shifted back to plaintiff, the [c]ourt finds that there are still material questions of fact regarding whether plaintiff's non-reappointment was discriminatory or not discriminatory in nature.
>
> Given plaintiff's background of her term of doing the job and her experience on the job and her purported qualifications, defendants' failure to provide any reasoning behind what the reason was for the change in office and a possible violation of the Municipal Code that requires the City of Plainfield to hire Plainfield residents for [a] Plainfield position, the [c]ourt finds material questions of fact exist as to whether defendants' employment action was non-discriminatory.

The motion for reconsideration was denied.

## III.

On appeal, defendants assert the trial court erred in denying their motions for summary judgment and reconsideration. Defendants contend they expressed non-discriminatory reasons for their decision and the court erred in not accepting the reasons and failing to analyze the pretext prong.

10

We "review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That is, summary judgment must be granted when, considering the competent evidence presented, viewed in the light most favorable to the non-moving party, there is "no genuine issue as to any material fact challenged" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"Reconsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990) (citing Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257, 263 (App. Div. 1987)).

The purpose of the LAD is to guarantee that all are afforded the civil rights promised by the state constitution. N.J.S.A. 10:5-2; Viscik v. Fowler Equip. Co., 173 N.J. 1, 12 (2002). "[T]he clear public policy of this State," reflected in the LAD, "is to abolish discrimination in the work place," Fuchilla v. Layman, 109 N.J. 319, 334 (1988), and to "eradicat[e] . . . 'the cancer of discrimination.'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005) (quoting Fuchilla, 109 N.J. at 334).

11

The "LAD prevents only unlawful discrimination," ibid., "[t]hus, although it prohibits discriminatory employment practices, [the] LAD acknowledges the right of employers to manage their businesses as they see fit." Viscik, 173 N.J. at 13. "What makes an employer's personnel action unlawful is the employer's intent." Zive, 182 N.J. at 446 (citing Marzano v. Comput. Sci. Corp., 91 F.3d 497, 507 (3d Cir. 1996)).

To address the difficulty of proving discriminatory intent, our Court has adopted the burden-shifting methodology articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[3] The elements of that analytical framework are:

> (1) proof by plaintiff of the prima facie elements of discrimination; (2) production by the employer of a legitimate, non-discriminatory reason for the adverse employment action; and (3) demonstration by plaintiff that the reason so articulated is not the true reason for the adverse employment action, but is instead a pretext for discrimination.
>
> [Myers v. AT&T, 380 N.J. Super. 443, 452 (App. Div. 2005) (citing McDonnell Douglas Corp., 411 U.S. at 802).]

---

[3]  In analyzing cases brought under the LAD, "New Jersey courts have traditionally sought guidance from the substantive and procedural standards established under federal law." Viscik, 173 N.J. at 13-14.

To establish a prima facie case in a gender discrimination termination context, plaintiff must prove: (1) she was in a protected class; (2) she was performing the job at a level that met the employer's legitimate expectations; (3) she was nevertheless discharged; and (4) she was replaced by a person of a different gender. Young v. Hobart W. Grp., 385 N.J. Super. 448, 463 (App. Div. 2005).

The New Jersey Supreme Court has held that "[t]he evidentiary burden at the prima facie stage is 'rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent – i.e., that discrimination could be a reason for the employer's action.'" Zive, 182 N.J. at 447 (citing Marzano, 91 F.3d at 508). Nevertheless, "[t]he establishment of a prima facie case gives rise to a presumption of discrimination." Viscik, 173 N.J. at 14.

Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Ibid. (citing Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 493 (1982)). "'To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection,' which would support a jury finding that unlawful

discrimination was not the cause of the adverse employment action." Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997) (quoting Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981)).  The employer, however, only carries the burden of production, not the burden of persuasion.  Greenberg v. Camden Cnty. Vocational & Tech. Sch., 310 N.J. Super. 189, 199 (App. Div. 1998).  "It is sufficient if the [employer]'s evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Ibid. (citing Burdine, 450 U.S. at 254).

"Where the employer produces such evidence, the presumption of discrimination disappears," and the burden then shifts back to the employee to show the proffered reason for the action was a pretext for discrimination. Bergen Com. Bank v. Sisler, 157 N.J. 188, 211 (1999) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)).

"To prove pretext . . . , a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent."  Viscik, 173 N.J. at 14.  The plaintiff need not provide direct evidence, but "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the

14

employer did not act for [the asserted] non-discriminatory reasons.'" <u>Kolb v. Burns</u>, 320 N.J. Super. 467, 478 (App. Div. 1999) (emphasis in original) (quoting <u>Fuentes v. Perksie</u>, 32 F.3d 759, 765 (3d Cir. 1994)). The plaintiff need not prove that the prohibited consideration, such as gender, was the sole or exclusive consideration in the determination to discharge; rather, he or she need only show "by a preponderance of the evidence that it made a difference in that decision." <u>Bergen Com. Bank</u>, 157 N.J. at 211. "The burden of proof . . . remains with the employee at all times." <u>Zive</u>, 182 N.J. at 450.

In asserting the court erred in denying summary judgment, defendants contend the decision not to reappoint plaintiff "cannot constitute a 'discharge' as she was not an 'at will' employee." They rely on N.J.S.A. 2B:24-4 in arguing plaintiff had no right or expectation to reappointment.

For purposes of this discussion, we accept plaintiff's assertion that she was discharged. Our Supreme Court has stated that "no functional difference exists between the failure to reappoint at the end of a fixed term and the dismissal of an at-will employee." <u>Battaglia v. Union Cnty. Welfare Bd.</u>, 88 N.J. 48, 62-63 (1981). <u>See also</u> <u>Nini v. Mercer Cnty. Cmty. Coll.</u>, 406 N.J. Super. 547, 557 (App. Div. 2009) (holding a contract non-renewal was equated with a termination in an age-discrimination case); <u>Rubin v. Chilton</u>, 359 N.J. Super.

105, 109-11 (App. Div. 2003) (finding doctors whose contract to render pathology services was terminated by the hospital could legitimately advance a claim that the hospital refused to contract with them because of age in violation of the LAD).

As to the cited statute, it establishes a one-year term for the municipal public defender. But any non-reappointment may still be scrutinized for unlawful discriminatory intent. Like an at-will employee, the decision not to reappoint plaintiff must not violate the LAD.

In finding plaintiff was "discharged," we agree with the trial judge that plaintiff established a prima facie case of gender discrimination under the LAD. We part ways with the judge's conclusion that defendants did not articulate a non-discriminatory reason for the decision not to reappoint plaintiff.

The trial judge found there were no factual reasons supporting Mapp's statement that plaintiff was "not fit" for his administration. But Mapp gave a detailed explanation of the reasons why he wished to appoint another person to the CMPD position. He sought a person to "help him achieve his goals," who could help move the city forward, who shared and could carry out his vision for the city. Mapp explained he did not believe plaintiff supported him and she did not fit what he envisioned for his administration. These are all legitimate non-

16

discriminatory reasons to support a decision not to reappoint a person to a contractual position. They are reasons commonly given in government at all levels as well as in the private sector with the advent of a new administration or owner or CEO or supervisor. And they are sufficient non-discriminatory reasons not to reappoint an individual as long as they are not disguising a discriminatory intent.

That is why the burden shifts back to the plaintiff who must demonstrate the proffered reasons were pretextual. As the United States Supreme Court has stated, the burden on a defendant to show a nondiscriminatory reason for the employment action is one of production, not persuasion. See Burdine, 450 U.S. at 254-55. We are satisfied defendants produced sufficient, non-discriminatory reasons to shift the burden back to plaintiff. However, the trial court did not consider the pretext prong in its consideration of the summary judgment motion because of its finding on defendants' production of non-discriminatory reasons for their actions.

On the motion for reconsideration, the trial court reasserted its determination that defendants had not met their burden of production. However, the court then stated that even if defendants had met that burden, there remained

some issues of fact regarding pretext. But there was no articulation of what those issues of fact were.

We turn then to the summary judgment record in our consideration of the pretextual prong and find the only assertion plaintiff made in support of pretext was that Mapp appointed a male attorney to the CMPD position. Without more, and in light of the statutory one-year term for the position, plaintiff has not demonstrated that her gender made a difference in Mapp's decision to appoint another person to the position.

Contrary to plaintiff's unsupported assertion that she was replaced because she was female, Mapp reappointed plaintiff for the first three years of his mayoral term. During those years he appointed a new female municipal court judge and reappointed a female municipal prosecutor. In 2016, two women were reappointed as municipal prosecutors—one as the Chief Municipal Court Prosecutor. And in 2017, when plaintiff was not reappointed, Mapp appointed two female municipal court judges and a female municipal prosecutor. Plaintiff conceded Mapp never made any gender-based comments to her and she never heard from anyone else of him expressing any gender-insensitive comments about her. Our review of the record reflects plaintiff did not establish the reason articulated by defendants for her non-reappointment was "merely pretext for

discrimination and not the true reason for the employment decision." Zive, 182 N.J. at 449. Plaintiff has not shown Mapp previously discriminated against her or has discriminated against other female City employees.

Because defendants presented legitimate non-discriminatory reasons for the decision not to reappoint plaintiff to her one-year position, and plaintiff did not show that the "proffered non-discriminatory reasons . . . w[ere] either post-hac fabrication or otherwise did not actually motivate the employment action," Fuentes, 32 F.3d at 764, we reverse the denial of defendants' summary judgment motion.

In light of this decision, we do not address the remaining issues raised in the appeal or the cross-appeal as they pertain to issues regarding the trial and fee award. The orders for judgment following the jury's verdict and for counsel fees are vacated.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION